UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

EUROSEMILLAS, S.A.,

       Plaintiff,

    v.

PLC DIAGNOSTICS INC., et al.,

       Defendants.

Case No. 17-cv-03159-MEJ

**ORDER RE: MOTION TO DISMISS**

Re: Dkt. No. 20

## INTRODUCTION

Pending before the Court is Defendants'[1] Motion to Dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6).  Mot., Dkt. No. 20. Plaintiff Eurosemillas, S.A. filed an Opposition (Dkt. No. 24) and Defendant filed a Reply (Dkt. No. 25).  The Court finds this matter suitable for disposition without oral argument and **VACATES** the September 7, 2017 hearing.  *See* Fed. R. Civ. P. 78(b); Civ. L.R. 7-1(b).  Having considered the parties' positions, the relevant legal authority, and the record in this case, the Court **GRANTS** Defendants' Motion for the following reasons.

## BACKGROUND

PLC and iNDx Technology Inc. entered into a joint venture agreement pursuant to which they agreed to create iNDx Lifecare, Inc. ("iNDx").  FAC ¶ 15, Dkt. No. 17.  Under the terms of the joint venture agreement, PLC transferred to iNDx all ownership rights of its patents and related intellectual property; in exchange, iNDx issued a promissory note.  *Id.* ¶ 17.  iNDx and

---

[1] Defendants are PLC Diagnostics, Inc.; National Medical Services, Inc. dba NMS Labs; LDIP, LLC; Reuven Duer; and Eric Rieders.

PLC entered into a Security Agreement dated December 27, 2013, securing iNDx's obligations by a pledge of the patents and all rights to related intellectual properly (the "Collateral"). *Id.* NMS and iNDx became "strategic partners" in August 2014. *Id.* ¶ 19. NMS provided bridge financing to iNDx; iNDx's obligations "were secured by a pledge of the same Collateral as was pledged to PLC." *Id.* ¶¶ 20, 21.

"In October 2014, Plaintiff provided bridge financing to iNDx in the form of a loan evidenced by a Secured Convertible Promissory Note, dated January 28, 2015, in the principal amount of $250,000, with a maturity date of March 31, 2016." *Id.* ¶ 22. "Under a Security Agreement from iNDx to Plaintiff, dated October 24, 2014, iNDx's obligations . . . were secured by a pledge of the same Collateral as" was pledged to PLC and NMS. *Id.* ¶ 23.

"Plaintiff, NMS, PLC and iNDx entered into an Intercreditor Agreement [(the "ICA")], dated October 22, 2014, pursuant to which Plaintiff, NMS and PLC agreed to hold pari passu rights, title and interest in and to the Collateral. Plaintiff never would have agreed to loan $250,000 to iNDx had not PLC and NMS entered into this agreement. A true and correct copy of the [ICA] is attached as Exhibit B" to the FAC. *Id.* ¶ 24; *see also id.* ¶ 49 (under the terms of the ICA, Plaintiff, NMS, and PLC share rights to the collateral); *id.* ¶ 50 ("NMS, PLC and Plaintiff share joint ownership of the Collateral as tenants in common"), *id.* ¶ 60 ("Plaintiff, PLC and NMS entered into an [ICA] dated October 22, 2014."). The ICA purports to be among Plaintiff, PLC, NMS and iNDx; it is signed by Javier Cano as manager of Eurosemillas, by Reuven Duer as President and CSO of PLC, and by Mohan Uttarwar on behalf of iNDx—it is not signed by NMS. *See* FAC, Ex. B (ICA); *see also* FAC ¶ 62 (Plaintiff, PLC and iNDx signed the ICA; NMS did not return a signed copy of the document). The ICA provides that any modification to the document must be executed in writing. ICA ¶ 10(a).

iNDx defaulted on all the notes. FAC ¶ 25. Defendants undermined efforts to keep iNDx solvent, and conspired to foreclose on the Collateral and plunder iNDx's intellectual property. *Id.* ¶¶ 26-42, 51. iNDx declared bankruptcy on August 11, 2016. *Id.* ¶ 43. iNDx, PLC, and NMS stipulated to lift the automatic bankruptcy stay; Plaintiff did not receive notice of the stipulation until after the bankruptcy court's October 19, 2016 order lifting the stay. *Id.* ¶¶ 44-45. PLC and

NMS conducted a public foreclosure sale of the Collateral on November 4, 2016, and purchased the Collateral. *Id.* ¶ 46. PCL and NMS assigned all their interest in the Collateral to LDIP. *Id.* ¶ 47.

NMS never challenged the existence or validity of the ICA until after iNDx declared bankruptcy. *Id.* ¶ 63. On March 11, 2016, counsel for NMS forwarded to Plaintiff a redlined document titled "Amended and Restated Intercreditor Agreement." *Id.* ¶ 63 & Ex. D (email dated March 11, 2016 from Barbara Forte, shareholder of "bipc" with attached Amended ICA ("Amended ICA")). Forte wrote to Cano at Eurosemillas that, at the request of Rieders at NMS and Doug Coopersmith at Buchanan Ingersoll & Rooney PC, she was sending "an Amended [ICA]" among "NMS, PLC and Eurosemillas" "with respect to the obligations due from INDX Lifecare, Inc. For your reference, the attached has been blacklined against the existing form of [the ICA] among the three parties." Amended ICA at 1. The blacklined document shows the "existing form of the [ICA]"—an October 28, 2014 ICA between iNDx, PLC and NMS—does not identify Plaintiff Eurosemillas as a party to the agreement. *Id.* at 2 ("Whereas, iNDx, PLC and NMS signed . . . that certain Intercreditor Agreement, dated as of October 28, 2014, [as amended June 2, 2015. . .")). Plaintiff does not allege the parties executed the Amended ICA, and does not attach an executed copy of the Amended ICA to the FAC. Plaintiff instead alleges "NMS would not have asked for such an amendment if NMS did not believe the [ICA] existed or was not valid." *Id.* ¶ 63.

LDIP is not alleged to have signed the ICA; the FAC instead alleges that, as signatories to the ICA, "PLC and NMS bound their assignees to the obligations undertaken by PLC, NMS and Plaintiff in" the ICA with respect to the Collateral. *Id.* ¶ 64; *see also id.* ¶ 67 (Section 10(c) of the ICA makes PLC and NMS "fully liable for any breach of" the ICA "by any such assignee").

Plaintiff alleges "on information and belief" that "PLC and NMS conspired and colluded with each other to devise a plan to plunder iNDx's intellectual property." FAC ¶ 40; *see also id.* ¶ 30 ("PLC began to collude and conspire with NMS to devise a plan where they would both share the rights to iNDx's intellectual property to the exclusion and detriment of the company and its other shareholders."). Plaintiff alleges that Defendants "blocked" proposed financing and that

they pretended to be negotiating an asset purchase agreement with iNDx, only to "inexplicably" drop the negotiations and notice the foreclosure sale, all with the goal to: "(a) make iNDx insolvent; (b) wrongfully plunder iNDx's assets; (c) disguise their breaches of fiduciary duties; and (d) disguise and misrepresent NMS's true intent with respect to the Asset Purchase Agreement, which was a ruse to distract iNDx while PLC and NMS carried out their subterfuge." *Id.* ¶ 56.

Plaintiff filed suit in this Court on June 1, 2017. *See* Compl., Dkt. No. 1. Defendants moved to dismiss the Complaint (First Mot., Dkt. No. 13); Plaintiff filed a notice of non-opposition (Resp., Dkt. No. 18) and filed the FAC. In the FAC, Plaintiff asserts claims for breach of contract; breach of the implied covenant of good faith and fair dealing; wrongful foreclosure; fraud in the inducement; and unfair competition under California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200. Defendants move to dismiss each claim.

### LEGAL STANDARD

Rule 8(a) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations and citation omitted).

A court may dismiss a complaint under Rule 12(b)(6) when it does not contain enough facts to state a claim to relief that is plausible on its face. *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 557). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (internal citations and parentheticals omitted).

United States District Court
Northern District of California

4

In considering a motion to dismiss, a court must accept all of the plaintiff's allegations as true and construe them in the light most favorable to the plaintiff. *Id.* at 550; *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007); *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007). In addition, courts may consider documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995) (citation omitted).

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted). However, the Court may deny leave to amend for a number of reasons, including "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## DISCUSSION[2]

### A.    Breach of Contract (PLC and NMS)

To state a claim for breach of contract under California law, Plaintiff must allege facts sufficient to show (1) the existence of a contract; (2) performance under the contract or an excuse for nonperformance; (3) breach by the defendant; and (4) resulting damages. *See McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1489 (2006). Defendants argue Plaintiff fails to adequately allege the existence of a contract, but do not address whether Plaintiff sufficiency pleads the remaining elements of this claim.

---

[2] Defendants also move to dismiss Plaintiff's claim for wrongful foreclosure asserted against PLC and NMS. *See* Mot. at 11. Plaintiff did not oppose the motion to dismiss that claim. *See* Opp'n. The Court accordingly finds Plaintiff concedes the wrongful foreclosure claim must be dismissed with prejudice. *See Mariscal v. Graco, Inc.*, 52 F. Supp. 3d 973, 984 (N.D. Cal. 2014) (deeming plaintiff's failure to address dispositive argument in opposition brief as concession that claim lacked merit); *Ramirez v. Ghilotti Bros. Inc.*, 941 F. Supp. 2d 1197, 1210 & n.7 (N.D. Cal. 2013) (defendant conceded affirmative defenses lacked merit by not responding to argument in plaintiff's motion to strike; citing cases). For that reason, the Court does not take judicial notice of the documents attached to Defendants' request for judicial notice, which Defendants offer in support of their motion to dismiss the unlawful foreclosure claim.

United States District Court
Northern District of California

Plaintiff alleges it entered into the ICA.  FAC ¶ 60.  It attaches to the FAC a copy of the ICA that is executed by PLC and Plaintiff but not by NMS.  *Id.*, ICA.  Plaintiff does not allege NMS intended to sign the ICA, actually signed the document, or told Plaintiff it had or would do so; it only alleges that NMS did not return an executed copy of the ICA.  *See* FAC ¶ 62; *see also* Opp'n at 4 ("Whether NMS signed the contract but never delivered an executed copy to the parties, or intended to sign and never got around to it, are factual issues that Plaintiff will explore in discovery.").  Plaintiff alleges that, under California law, PLC and NMS can be bound without NMS' signature.  *See* FAC ¶ 62 (citing *Angell v. Rowlands*, 85 Cal. App. 3d 536, 541 (1978)).  Plaintiff further argues the lack of executed copy is irrelevant, because the claim "does not turn on whether NMS signed the agreement" and that the FAC alleges Defendants' "course of performance."  Opp'n at 2.  Plaintiff contends the "course of performance" is illustrated by the allegation that "NMS never challenged the existence or validity of the [ICA] until after iNDx declared bankruptcy" and that counsel for NMS forwarded Plaintiff a redlined version of an Amended ICA in March 2016.  FAC ¶ 63.

The lack of an executed copy of the ICA, under the facts alleged here, is not irrelevant.  First, the FAC does not allege facts sufficient to show NMS was aware of the existence of an enforceable ICA to which Plaintiff was a party.  The FAC accordingly does not show NMS had any reason to challenge the existence or validity of Plaintiff's claim under the ICA.  Second, there also are no allegations showing any purported course of dealing or performance by NMS under the terms of the ICA, much less facts sufficient to plausibly show NMS was bound by the ICA through execution or performance.  *See* FAC ¶¶ 24, 60-74.  Third, the Amended ICA references an original agreement dated October 28, 2014, to which Plaintiff also was not a party.  The Amended ICA does not support Plaintiff's allegation it was a party to the original ICA, which was dated October 22, 2014; nor does it support the argument that NMS considered the ICA to be an enforceable agreement even though there is no evidence or allegation NMS executed the ICA.  *See* ICA; Amended ICA at 2.

Based on the existence of certain recitals in the Amended ICA, Plaintiff also argues that whether the ICA is binding is a question of fact that is not appropriately resolved on motion to

United States District Court
Northern District of California

1    dismiss.  Opp'n at 4 ("Whereas, iNDx, PLC and NSM signed" the ICA dated October 28, 2014

2    and amended June 2, 2015, and "[w]hereas, iNDx, PLC, NMS and SpanCo entered into" a later

3    ICA).  Alternatively, Plaintiff argues it should be allowed to explore in discovery whether the

4    course of performance between the parties shows NMS is bound by the ICA.  *Id.* at 5.  Plaintiff

5    next argues that parole evidence "will show that the parties never considered, mu[ch] less

6    intended, for the agreement to be valid only if everyone signed." *Id.* at 8.  It argues the contract is

7    ambiguous on this point. *Id.*

8           Plaintiff cannot elect to skip the requirement of pleading a valid claim for breach of

9    contract by arguing discovery will provide necessary factual elements.  Plaintiff's contract claim

10   against NMS is based on a document that is not executed by NMS.  Absent detailed factual

11   allegations showing NMS' signature was not necessary to create an enforceable contract, Plaintiff

12   fails to state a claim for breach of contract against NMS.

13          With respect to PLC, Plaintiff has sufficiently alleged the existence of a contract.  PLC

14   bears the burden of establishing the ICA was not intended to be complete until all parties had

15   signed by parol evidence or an express condition in the ICA.  *See Angell*, 85 Cal. App. 3d at 541;

16   *see also Febelbaum v. Heller LLP v. Smylie*, 174 Cal. App. 4th 1351, 1365 (2009).  PLC did not

17   meet that burden in its Motion, which offers only argument.

18          The Court GRANTS the Motion to Dismiss the Breach of Contract claim as to NMS, and

19   DENIES the Motion as to PLC.

20   **B.      Breach of the Implied Covenant of Good Faith & Fair Dealing (PLC, NMS, LDIP)**

21          Having failed to state a claim for breach of contract against NMS, Plaintiffs fail to state a

22   claim against NMS for breach of the implied covenant of fair dealing implied in the ICA.  *See*

23   *Smith v. City & Cty. of S.F.*, 225 Cal. App. 3d 38, 49 (1990) ("The prerequisite for any action for

24   breach of the implied covenant of good faith and fair dealing is the existence of a contractual

25   relationship between the parties, since the covenant is an implied term in the contract. . . .  Without

26   a contractual relationship, appellants cannot state a cause of action for breach of the implied

27   covenant.").

28          Moreover, because the claim for breach of the implied covenant of good faith and fair

7

United States District Court
Northern District of California

1    dealing is based on the same conduct that forms the basis of Plaintiff's breach of contract claim,

2    the breach of the implied covenant claim is superfluous: "a claim alleging breach of the implied

3    covenant of good faith and fair dealing cannot be based on the same breach as the contract claim,

4    or else it will be dismissed." *Landucci v. State Farm Ins. Co.*, 65 F. Supp. 3d 694, 716 (N.D. Cal.

5    2014) (internal quotation marks omitted; citing *Guz v. Bechtel Nat'l, Inc.*, 24 Cal. 4th 317, 327

6    (2000) ("[W]here breach of an actual term is alleged, a separate implied covenant claim, based on

7    the same breach, is superfluous.")).  The breach of the implied covenant claim is based on

8    Defendants' breach of "various provisions" of the ICA as described in the factual recitals of the

9    FAC, including the improper refusal to recognize Plaintiff's pari passu rights, and title and interest

10   in and to the Collateral.  FAC ¶¶ 76-78.  As such, the claim is redundant of the breach of contract

11   claim and must be dismissed.

12        Finally, LDIP is not a signatory to the ICA.[3]  The ICA specifies that the terms and

13   conditions of the ICA "shall be binding upon the Debtor and its successors and assigns."  ICA ¶

14   10(b).  The Debtor is iNDx.  ICA p.9.  But Plaintiff does not allege that iNDx assigned its rights

15   and liabilities under the ICA to LDIP; instead, it alleges that NSM and PLC transferred their

16   interest in the Collateral to LDIP.  FAC ¶ 66.  Absent a direct contractual relationship between

17   Plaintiff and LDIP, or absent allegations sufficient to show that LDIP assumed liabilities under the

18   ICA, the Court cannot find Plaintiff states a claim for breach of the implied covenant of good faith

19   and fair dealing against that Defendant.  *See Products & Ventures Int'l v. Axus Stationary*

20   *(Shanghai) Ltd*., 2017 WL 201703, at *10 & n.12 (N.D. Cal. Jan. 18, 2017).

21        Defendants' Motion to Dismiss the Breach of the Implied Covenant Claim is GRANTED.

22   **C.      Fraud in the Inducement (PLC, NMS, Duer, Rieders)[4]**

23        To state a fraud claim under the heightened pleading requirements of Rule 9(b), Plaintiff

24   _____

25   [3] Although Plaintiff does not name LDIP as a Defendant to the breach of contract claim, it alleges
     LDIP breached the ICA by "challeng[ing] the validity of the [ICA] and refus[ing] to recognize
26   Plaintiff's joint ownership rights in the Collateral."  FAC ¶ 66; *see also id*. ¶ 76 ("PLC, NMS and
     LDIP breached various provisions of the [ICA] by conduct described above.").

27   [4] Although Plaintiff does not identify LDIP as a Defendant to the Fraud in the Inducement claim
     (*see* FAC p.14), it alleges LDIP is liable for Defendants' conduct because it ratified and accepted
28   the benefits of their misrepresentations, omissions, and promises (*id*. ¶ 101).

must allege the "who, what, when, where, and how" of the misconduct, and be specific enough that Defendants "can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citations omitted). Plaintiff must differentiate the allegations between each Defendant it accuses of fraud, and cannot "lump [them] together." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) ("In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identify the role of each defendant in the alleged fraudulent scheme") (internal quotation marks and citations omitted).

The FAC alleges that Duer, as shareholder and director of PLC, and Rieders, as chairman of NMS's Board of Directors, "knowingly and willfully conspired and agreed among themselves to harm Plaintiff by engaging in a pattern of intentional, willful, and malicious misrepresentations to induce Plaintiff to lend $250,000 to iNDx based on the false promise that PLC and NMS would share joint ownership of the Collateral as co-tenants if iNDx defaulted on the notes." FAC ¶ 98. Somewhat more specifically, Plaintiff alleges that "as early as October 2014 and in the months that followed," Duer and Rieders "promised and assured Plaintiff that PLC and NMS would, and did, enter into the Intercreditor Agreement and that PLC and NMS would fulfill their obligations under this contract." *Id.* ¶ 96. "On or around March 11, 2016" Rieders "instructed counsel for NMS to send to Plaintiff a draft of an amendment to the" ICA. *Id.* ¶ 97. Duer and Rieders did so never intending to give Plaintiff rights in the collateral. *Id.* ¶ 99. All these acts occurred in San Francisco and Santa Clara counties. *Id.* ¶ 14; *see generally* Opp'n at 9-10 (identifying allegations of FAC Plaintiff contends state a claim for fraud).

Plaintiff alleges these Defendants induced it to lend money to iNDx, but insufficiently alleges fraudulent inducement: it fails to allege facts showing which Defendant made what "misrepresentations" to induce whom at Eurosemillas to lend funds to iNDx; when each misrepresentation in the "pattern" was made; or where and how each misrepresentation was made (e.g., at an in person meeting in San Francisco, via email, or during a conference call). *See, e.g.*, FAC ¶ 102 (Duer and Rieders "designed, and intended to design, a scheme and artifice to defraud Plaintiff by making promises, misrepresentations, and misstatements that Defendants knew they

United States District Court
Northern District of California

United States District Court
Northern District of California

had no intention of keeping"); *id.* ¶ 103 ("The misrepresentations . . . were material").  Without such details, Plaintiff's allegations are conclusory and do not state a fraudulent inducement claim under Rule 9(b).  *See, e.g., Swartz*, 476 F.3d at 765 (conclusory allegations that defendants A & B knew that defendants C & B were making false statements to clients "and thus were acting in concert with" or "as agents of" the other defendants, did not state a fraud-based claim against defendants A & B); *Smith v. Ygrene Energy Fund, Inc.*, 2017 WL 3168519, at *5 (N.D. Cal. July 26, 2017) (allegations defendants made unspecified statements on website and in unidentified materials, as well as in unidentified email or phone calls with unnamed representatives, without linking to identifiable people, dates, or places "falls short of Rule 9(b)."); *McGraw Co. v. Aegis General Ins. Agency, Inc.*, 2016 WL 3745063, at *6 (N.D. Cal. July 13, 2016) (allegations that "agents or employees" of defendant "spread false rumors that Plaintiffs were abandoning the powersports sector to damage Plaintiffs in the market" does not satisfy Rule 9(b) because it "fails to give the particulars of the allegedly false rumors[;] It does not say who spread these rumors, how, to whom the rumors were repeated, and so on.").

      The Court accordingly GRANTS the Motion to Dismiss the Fraudulent Inducement claim.

**D.     Unfair Competition (all Defendants)**

      The UCL prohibits unfair competition, including: (1) unlawful acts or practices; (2) unfair acts or practices; and (3) fraudulent acts or practices.  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999).  To establish a practice is "unlawful" within the meaning of the UCL, a plaintiff must identify federal, state, local, or common law as a predicate for a section 17200 violation.  *Farmers Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992).  A plaintiff must show a violation of some independent law.  *Id.* (section 17200 "borrows" violations of other laws and treats them as unlawful practices actionable separately under section 17200).  To establish a practice is "unfair", a plaintiff must show "[a]n act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition, and is not an injury the consumers themselves could reasonably have avoided."  *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 839 (2006).  Alternatively, a plaintiff can demonstrate a "practice offends an established public policy or when the practice is

immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001) (internal citation and quotation marks omitted).  Finally, a plaintiff can show a UCL violation if the predicate public policy alleged to be violated is "'tethered' to specific constitutional, statutory or regulatory provisions." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003).

The FAC alleges Defendants engaged in unlawful, unfair, and/or fraudulent business practices by (1) defrauding Plaintiff "in the manner described above"; (2) conducting a sham foreclosure; and (3) plundering the Collateral from iNDx.  *See* FAC ¶¶ 108-111.  Plaintiff has abandoned his unlawful foreclosure claim.  *See supra* n.2.  The allegations that Defendants defrauded Plaintiff "in the manner described above" and "plundered" the collateral are conclusory and not pleaded with specificity; indeed, the Court already dismissed the fraudulent inducement claim.

The FAC also fails to state a claim based on the theory Defendants violated the UCL by breaching the ICA.  "[A] breach of contract may form the predicate for a section 17200 claim, provided it also constitutes conduct that is unlawful, or unfair, or fraudulent. . . .  [Plaintiff], however, has not pled that the breaches of contract are independently unlawful, unfair, or fraudulent, merely" that defendants breached their contracts.  *Sybersound Records, Inc. v. UAV Corp.*, 517 F.3d 1137, 1152 (9th Cir. 2008) (internal quotation marks and citation omitted).  But the Court already dismissed the breach of contract claim against NMS, and Plaintiff has not shown PLC's violation of the ICA is independently unlawful, unfair, or fraudulent.  For example, Plaintiff has not alleged facts sufficient to show the breach of contract violated an independent law; has not shown that the breach was "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers"; and has not alleged the harm was something it could not have reasonably avoided.  Plaintiff thus does not allege facts showing any underlying predicate violation that could constitute a violation of the UCL.

The Court GRANTS the Motion to Dismiss the UCL claim.

### CONCLUSION

For the foregoing reasons, the Court GRANTS the Motion to Dismiss in its entirely, with

United States District Court
Northern District of California

the exception of the breach of contract claim against PLC.  The wrongful foreclosure claim that Plaintiff abandoned is dismissed with prejudice; the other claims are dismissed with leave to amend.  Plaintiff may file an amended complaint by September 14, 2017.

The Court does not reach Defendants' argument that Plaintiff is not entitled to indemnity under California Code of Civil Procedure section 1021.6.  *See* Mot. at 14-15.  Defendants may reassert it in connection with a Rule 12(f) motion if Plaintiff reasserts that request in an amended pleading.

**IT IS SO ORDERED.**

Dated: August 28, 2017

_____
MARIA-ELENA JAMES
United States Magistrate Judge