Steven J. Kahn (CA Bar No. 76933)
Harry D. Hochman (CA Bar No. 132515)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: 415.263.7000
Facsimile: 415.263.7010
Email: skahn@pszjlaw.com
       hhochman@pszjlaw.com

Attorney for PLC DIAGNOSTICS, INC., NATIONAL MEDICAL SERVICES, INC., LDIP, LLC, REUVEN DUER and ERIC RIEDERS

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| EUROSEMILLAS, S.A., a Spanish corporation, | Case No.: 17-cv-3159-MEJ |
| Plaintiff, | **THIRD PARTY COMPLAINT** |
| v. | |
| PLC DIAGNOSTICS, INC., a Delaware corporation; NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, a Pennsylvania corporation; LDIP, LLC, a Delaware limited liability company; REUVEN DUER; ERIC RIEDERS; and DOES 1 through 10, inclusive, | |
| Defendants. | |
| PLC DIAGNOSTICS, INC., a Delaware corporation; NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, a Pennsylvania corporation; LDIP, LLC, a Delaware limited liability company; REUVEN DUER; and ERIC RIEDERS; | |
| Third Party Plaintiffs, | |
| v. | |
| MOHAN UTTARWAR, an individual, and PIYUSH GUPTA, an individual, | |
| Third Party Defendant. | |

DOCS_LA:309298.5 70872/002

By and for their Third Party Complaint, PLC DIAGNOSTICS, INC., NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, LDIP, LLC, REUVEN DUER and ERIC RIEDERS (collectively "Third Party Plaintiffs") allege as follows:

**PARTIES**

1. National Medical Services, Inc. ("NMS") is a corporation organized under the laws of Pennsylvania with its principal place of business in Willow Grove, Pennsylvania.

2. PLC Diagnostics, Inc. ("PLC") is a corporation organized under the laws of Delaware with its principal place of business in Thousand Oaks, California.

3. LDIP, LLC ("LDIP"), is a limited liability company organized under the laws of Delaware.

4. Reuven Duer is an individual domiciled in California.

5. Eric Rieders is an individual domiciled in Pennsylvania.

6. Mohan Uttarwar ("Uttarwar" or "Third Party Defendant") is an individual domiciled in California.

7. Piyush Gupta ("Gupta," and with Uttarwar "Third Party Defendants") is an individual domiciled in California.

**JURISDICTION AND VENUE**

8. The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) over the claims asserted in the original complaint by Eurosemillas, S.A. ("Eurosemillas"), a Spanish corporation, located in Cordoba, Spain, against the Defendants/Third Party Plaintiffs (the "Complaint"), because it is an action between citizens of the United States and a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

9. The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims asserted herein by Third Party Plaintiffs against Uttarwar and Gupta because they are so related to claims in the action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

1

DOCS_LA:309298.5 70872/002

**FACTUAL ALLEGATIONS**

11. iNDx Lifecare, Inc. ("iNDx") was formed pursuant to a Joint Venture Agreement ("JV Agreement") between PLC and iNDx Technology, Inc., dated December 27, 2013.

12. Uttarwar was at all relevant times a member of iNDx' Board of Directors and acted as Chief Executive Officer of iNDx until January 31, 2016.

13. Gupta became a member of iNDx's Board of Directors on February 12, 2016, and thereafter also became the Managing Consultant of iNDx on June 30, 2016.

**A.     iNDx Agreements With PLC and NMS**

14. iNDx issued to PLC a Secured Convertible Promissory Note, dated December 27, 2013, in the principal amount of $3,100,000.00 and a maturity date of December 31, 2018 (the "PLC Note").  iNDx's obligations under the PLC Note were secured by a pledge of all of iNDx's right, title and interest in patents and other intellectual property, as identified in that agreement (collectively, the "Collateral"), pursuant to a Security Agreement from iNDx to PLC, dated December 27, 2013.  PLC recorded a UCC-1 financing statement on September 24, 2014.

15. NMS provided secured debt financing to iNDx pursuant to a Secured Convertible Note dated November 15, 2014, in the principal amount of $1,000,000, with a maturity date of December 31, 2015 (the "NMS Note").

16. NMS provided additional secured debt financing to iNDx pursuant to a Secured Convertible Promissory Note, dated May 27, 2015 in the principal amount of $500,000 (the "Second NMS Loan" and together with the NMS Loan, the "NMS Loans").

17. iNDx's obligation under the NMS Notes and related documents are secured by a pledge of the same Collateral pledged to PLC pursuant to a Security Agreement dated October 28, 2014 (the "Original NMS Security Agreement"), as amended by the First Amendment to the Security Agreement, dated May 27, 2015 (together the "NMS Security Agreements").  NMS recorded a UCC-1 financing statement on October 30, 2014.

18. NMS and iNDx are parties to a Product Development Agreement ("PDA") and License Agreement ("License Agreement"), dated August 1, 2014.  Under the PDA and License

2

Agreement, NMS had, among other rights, exclusive commercialization rights world-wide (outside of India) for all products that iNDx was developing under the PDA and the NMS License.

19. The PDA provides, in part, at ¶ 3.1.2 that:

> Pursuant to the License Agreement, NMS shall have the exclusive license, right and title to sell, market and distribute in any and all territories in the world (other than in India) Product(s) for use in the Field, along with a nonexclusive license, right and title to sell, market and distribute in any and all territories in the world (other than in India) Product(s) for use in the Alternate Field.

"Field" and "Alternate Field" refer to defined categories of products that iNDx was developing under the PDA and under license from NMS (the "NMS License").

20. Uttarwar executed the PDA and License Agreement on behalf of iNDx and was and is knowledgeable concerning their provisions and with the intellectual property and products covered by the License Agreement.

21. iNDx, PLC and NMS executed an intercreditor agreement dated on or about October 28, 2014 (the "Original Intercreditor Agreement"). Concurrent with the Second NMS Loan and Second NMS Security Agreement, the parties executed a First Amendment to the Intercreditor Agreement, dated on or about June 2, 2015 (the "First Amendment " and in conjunction with the Original Intercreditor Agreement, the "Intercreditor Agreement"). The Intercreditor Agreement provided in summary, and in relevant part, that the PLC Note and NMS Notes, and their respective liens on the Collateral, would be treated on a *pari passu*, pro rata basis.

**B.   Uttarwar's False Promises, Gupta's False Representations and Eurosemillas False Claims**

22. Eurosemillas is a Spanish company of which a friend of Uttarwar, Javier Cano, was and is a principal. Eurosemillas alleges that in approximately March 2014, it invested $200,000 as a participant in iNDx' $2,100,000 Series A equity financing.

23. Eurosemillas alleges in the Complaint that it was induced to participate in the Series A financing by misrepresentations by PLC and Duer concerning the state of the technology provided by PLC to iNDx, and specifically that the technology would be ready to be marketed in six months.

3

24.     PLC and Duer made no such representations to Uttarwar or to Eurosemillas. To the extent misrepresentations concerning the state of iNDx's technology were made to Eurosemillas, they were made by Uttarwar.

25.     Eurosemillas alleges in the Complaint that it made a loan in the principal amount of $250,000 to iNDx (the "Spanco Loan") pursuant to a Secured Convertible Promissory Note dated January 28, 2015, with a maturity date of March 31, 2016 (the "Spanco Note").

26.     Eurosemillas alleges in the Complaint that iNDx' obligations under the Spanco Note were secured by a Security Agreement dated three months earlier, on October 24, 2014 (the "Spanco Security Agreement"). A UCC-1 financing statement was not recorded until November 19, 2015, over a year later.

27.     Eurosemillas alleges further that it was promised that the Spanco Note would be secured by a lien on the Collateral and treated on a *pari passu*, pro rata basis with the PLC Note and the NMS Note. It alleges PLC's and NMS's agreement is evidenced by a document filed with the Court, purporting to be an intercreditor agreement dated October 22, 2014, executed by Eurosemillas, iNDx, and PLC but not by NMS (the "Fraudulent Eurosemillas Intercreditor Agreement").

28.     Third Party Plaintiffs are informed and believe, and on that basis allege, that Eurosemillas was also promised by Uttarwar that Eurosemillas would have exclusive commercialization rights for certain iNDx intellectual property in Europe and Latin America.

29.     There was no October 22, 2014 intercreditor agreement with Eurosemillas. There was no Spanco Security Agreement as of October 24, 2014. There was no Spanco Note as of January 28, 2015.

30.     Third Party Plaintiffs are informed and believe, and on that basis allege, that $250,000 was received from Eurosemillas on November 5, 2014, but on the same day, without board approval, Uttarwar wired back approximately $100,000 for use by Javier Cano, ostensibly in connection with a Eurosemillas-controlled entity, iNDx Europe, that was essentially a shell with no cash flow or activities.

4

DOCS_LA:309298.5 70872/002

31. Eurosemillas alleges in the Complaint that the iNDx Board of Directors approved the Spanco Loan on a *pari passu*, pro rata basis at a board meeting on January 28, 2015. The Spanco Loan was not approved on any basis at the January 28, 2015 board meeting. Any representation to Eurosemillas to that effect was made by Uttarwar. Board approval would not in any event have constituted authorization by PLC and NMS under the Intercreditor Agreement to enter into the Spanco Loan.

32. At the time the Spanco Loan was allegedly made, PLC and NMS had not been advised of the Spanco Loan, had not been asked to enter into any intercreditor agreement with Eurosemillas and had not been asked to cede any distribution rights to Eurosemillas. Any such promises or representations to Eurosemillas were made by Uttarwar, without the knowledge or consent of PLC or NMS.

33. Uttarwar's inducement and agreement to treat a loan by Eurosemillas on a *pari passu* basis with the PLC Note and the NMS Note violated the rights of PLC and NMS under their Intercreditor Agreement with iNDx.

34. Uttarwar's inducement and agreement to grant European and Latin American commercialization rights to Eurosemillas violated the rights of NMS under its PDA and License Agreement with iNDx.

35. PLC and NMS were first asked to amend their Intercreditor Agreement to include Eurosemillas in or around early August, 2015. At no time was PLC or NMS obligated to enter into any intercreditor agreement with Eurosemillas.

36. Uttarwar was advised on August 4, 2015 that a proffered form of intercreditor agreement was unacceptable to the existing parties to the Intercreditor Agreement, that the document required revision, and that documentation of the Spanco Loan, including the executed Spanco Note and Spanco Security Agreement, must be provided.

37. Third Party Plaintiffs are informed and believe, and on that basis allege, that the Fraudulent Eurosemillas Intercreditor Agreement was created by taking a signature page executed by Duer and attaching it to the document <u>rejected</u> on August 4, 2015 and backdating the document to October 22, 2014. Its submission as evidence that, as of October 22, 2014, there was a final

5

intercreditor agreement with Eurosemillas on those terms that was simply missing one signature, is fraudulent.

38. A revised draft form of intercreditor agreement was circulated by iNDx counsel on August 7, 2015. It bore a placeholder date of "January __, 2015" that was represented by iNDx counsel to be an approximation of the date the Spanco Loan was made. As of that date, there was no executed Spanco Note or Spanco Security Agreement.

39. The draft form of intercreditor agreement with Eurosemillas was never executed, but was later used as a starting point for a proposed second amendment to the Intercreditor Agreement in March 2016.

40. As of December 10, 2015, NMS began providing secured and unsecured bridge financing to iNDx that was not covered by the Intercreditor Agreement, amounting to approximately $300,000 by January 2016.

41. As of March 2016, NMS negotiated to obtain, in part, *pari passu* treatment of its additional funding with the existing and thus more senior secured debt. That existing debt included the Spanco Note, which though junior to the PLC Note and NMS Note was senior to the additional NMS loans.

42. Drafts were prepared using as a starting point the unsigned August 2015 draft (with its intentional fictional "January __, 2015" date). These interlineated drafts refer to the Original Intercreditor Agreement and the First Amendment, and not to the Fraudulent Eurosemillas Intercreditor Agreement or any other purported agreement with Eurosemillas.

43. Eurosemillas received a proposed second amendment to the Intercreditor Agreement on March 11, 2016. Although part of the parties' prospective concessions included the consent by NMS and PLC to the *pari passu* treatment of the Spanco Note, Eurosemillas elected not to sign or even to propose revisions.

44. Thereafter on July 14, 2016, PLC and NMS noticed a foreclosure sale for August 12, 2016. iNDx commenced a bankruptcy case in the United States Bankruptcy Court for the Northern District of California on August 11, 2016. iNDx stipulated to relief from the automatic stay on October 19, 2016, and the foreclosure sale was conducted on November 4, 2015. PLC and NMS,

DOCS_LA:309298.5 70872/002

acting through an affiliate, LDIP, acquired the Collateral for a credit bid of $1,000,000. The bankruptcy case was dismissed.

45. On or about December 24, 2016, almost two months after the foreclosure sale, Gupta executed a Quitclaim Assignment of any of iNDx's interests in and to the intellectual property constituting the Collateral to Eurosemillas, which Quitclaim Assignment recites as a purported fact that Eurosemillas received *pari passu* rights in the Collateral pursuant to the Fraudulent Eurosemillas Intercreditor Agreement.

46. Third Party Plaintiffs are informed and believe, and on that basis allege, that Uttarwar and Gupta have represented and continues to represent falsely to Eurosemillas that during the second half of 2015 and the first half of 2016, PLC and NMS "conspired" to "plunder" their Collateral, including by blocking various restructuring or refinancing proposals that would allegedly have prevented iNDx from becoming insolvent. Eurosemillas makes these allegations in its Complaint.

47. NMS and PLC made numerous attempts and proposals to assist iNDx and thereby preserve their own investments, and in each instance, without exception, their efforts were blocked or impaired by actions or inactions by Eurosemillas itself, or by actions or inactions of Uttarwar and Gupta motivated by self-interest, in breach of his fiduciary duties of care, loyalty and good faith to shareholders and creditors of an insolvent company. To the extent, if any, that Third Party Plaintiffs were to incur damages to Eurosemillas on account of any failure to consummate restructuring proposals, Uttarwar and Gupta are fully responsible for such damages.

48. Eurosemillas has claimed and continues to claim in the Complaint that the foreclosure was void, that it has a joint tenancy ownership interest in the Collateral (including under the purported Quitclaim Assignment executed by Gupta based upon false representations of fact), and that it is entitled to exclusive general commercialization rights in the European Union and Latin America for all products using iNDx intellectual property. Before and after the foreclosure, Eurosemillas had and has no rights, as asserted, in the intellectual property that constituted the Collateral and its claim and exercise of exclusive commercialization rights in Europe and Latin America have been and continue to be in violation of NMS's rights under the PDA and License Agreement and LDIP's ownership rights.

7

49. Probable cause did and does not exist for the filing of the Complaint, as the factual allegations are unfounded and no legal basis exists for such remedies. Third Party Plaintiffs are informed and believe, and on that basis allege, that Uttarwar and Gupta induced Eurosemillas to bring litigation without probable cause by, in part, offering a joint venture, partnership or similar arrangement to Eurosemillas in the event that Eurosemillas prevails in the lawsuit, and that Eurosemillas has induced Uttarwar and Gupta to provide support for the litigation on the same basis.

**FIRST CAUSE OF ACTION**
(By all Third Party Plaintiffs Against Uttarwar for Equitable Indemnity)

50. Third Party Plaintiffs incorporate by this reference the allegations in paragraphs 1-49 hereof.

51. As alleged herein, Uttarwar engaged in conduct that is the basis for each of the claims asserted by Eurosemillas in the Complaint against Third Party Plaintiffs.

52. Uttarwar is equitably responsible to indemnify Third Party Plaintiffs, in full or in part, for any damages that they may incur resulting from the claims asserted by Eurosemillas in the Complaint, in an amount to be determined at trial.

**SECOND CAUSE OF ACTION**
(By PLC and NMS Against Uttarwar and Gupta for Intentional Interference with Contractual Relations – Intercreditor Agreement)

53. PLC and NMS incorporate by this reference the allegations in paragraphs 1-52 hereof.

54. At all relevant times, PLC, NMS and iNDx were parties to the Intercreditor Agreement.

55. Uttarwar and Gupta had knowledge of the Intercreditor Agreement.

56. In engaging in the conduct alleged herein, Uttarwar and Gupta have prevented performance of the Intercreditor Agreement or made performance more expensive or difficult.

57. Uttarwar and Gupta intended to disrupt performance of the Intercreditor Agreement, or knew that disruption of performance was certain or substantially certain to occur.

58. As a result of such conduct, PLC and NMS have suffered or will suffer harm.

59. Uttarwar's and Gupta's conduct was a substantial factor in causing such harm.

8

60. In engaging in the conduct alleged herein, Uttarwar and Gupta acted with a willful and conscious disregard of the rights of others, and are guilty of oppression, fraud or malice, entitling PLC and NMS to an award of exemplary damages.

### THIRD CAUSE OF ACTION
(By NMS Against Uttarwar and Gupta for Intentional Interference with Contractual Relations – Product Development Agreement and License Agreement)

61. NMS incorporates by this reference the allegations in paragraphs 1-60 hereof.

62. At all relevant times, NMS and iNDx were parties to the PDA and License Agreement.

63. Uttarwar and Gupta had knowledge of the PDA and License Agreement.

64. In engaging in the conduct alleged herein, Uttawar's and Gupta's conduct prevented performance of the PDA and License Agreement or made performance more expensive or difficult.

65. Uttarwar and Gupta intended to disrupt performance of the PDA and License Agreement, or knew that disruption of performance was certain or substantially certain to occur.

66. As a result of such conduct, NMS has suffered or will suffer harm.

67. Uttarwar's and Gupta's conduct was a substantial factor in causing such harm.

68. In engaging in the conduct alleged herein, Uttarwar and Gupta acted with a willful and conscious disregard of the rights of others, and are guilty of oppression, fraud or malice, entitling NMS to an award of exemplary damages.

**WHEREFORE**, Third Party Plaintiffs pray that judgment be entered as follows:

   a. On the first claim for relief, for an award of compensatory damages to Third Party Plaintiffs in an amount to be established at trial;

   b. On the second claim for relief, for an award of compensatory damages to PLC and NMS in an amount to be established at trial;

   c. On the third claim for relief, for an award of compensatory damages to NMS in an amount to be established at trial;

   d. On the second and third claims for relief, for an award of exemplary damages in an amount to be established at trial.

   e. For an award of attorneys' fees and costs of suit; and

9

DOCS_LA:309298.5 70872/002

f. For such other relief as is just and proper.

Dated:   October 17, 2017       PACHULSKI STANG ZIEHL & JONES LLP

By: */s/ Harry D. Hochman*
Steven J. Kahn
Harry D. Hochman
Attorneys for PLC DIAGNOSTICS, INC., NATIONAL MEDICAL SERVICES, INC., LDIP, LLC, REUVEN DUER and ERIC RIEDERS

10

DOCS_LA:309298.5 70872/002

# **PROOF OF SERVICE**

STATE OF CALIFORNIA      )
                         )
COUNTY OF LOS ANGELES    )

I, Mary de Leon, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067.

On <u>October 17, 2017</u>, I caused to be served the ***THIRD PARTY COMPLAINT*** in this action as follows:

☐ (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address.

☑ (BY NOTICE OF ELECTRONIC FILING) I caused to be served the above-described document by means of electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, for parties and/or counsel who are registered ECF Users.

☐ (BY FAX) I caused to be transmitted the above-described document by facsimile machine to the fax number(s) as shown. The transmission was reported as complete and without error. (Service by Facsimile Transmission to those parties on the attached List with fax numbers indicated.)

☑ (BY OVERNIGHT DELIVERY) I caused to be served the above-described document by sending by Federal Express to the addressee(s) as indicated on the attached list.

I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

Executed on <u>October 17, 2017</u>, at Los Angeles, California.

*/s/ Mary de Leon*
Mary de Leon

DOCS_LA:309704.1 70872/002

# **SERVICE LIST**

**By FedEx Delivery:**

Magistrate Judge Maria-Elena James
San Francisco Courthouse
Courtroom B – 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

**3:17-cv-03159-MEJ Notice will be sent via NEF/electronically mailed to:**

- **Ruchit Kumar Agrawal**
  ruchit@kumarlawsv.com
- **Reuven Duer**
  ruvduer@gmail.com
- **Harry David Hochman**
  hhochman@pszjlaw.com
- **PLC Diagnostics Inc.**
  ruvduer@gmail.com
- **Eric Rieders**
  Eric.Rieders@nmslabs.com

DOCS_LA:309704.1 70872/002