Steven J. Kahn (CA Bar No. 76933)
Harry D. Hochman (CA Bar No. 132515)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: 415.263.7000
Facsimile: 415.263.7010
Email: skahn@pszjlaw.com
          hhochman@pszjlaw.com

Attorney for PLC DIAGNOSTICS, INC.,
NATIONAL MEDICAL SERVICES, INC., LDIP,
LLC, REUVEN DUER and ERIC RIEDERS

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| EUROSEMILLAS, S.A., a Spanish corporation,<br><br>               Plaintiff,<br><br>    v.<br><br>PLC DIAGNOSTICS, INC., a Delaware corporation; NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, a Pennsylvania corporation; LDIP, LLC, a Delaware limited liability company; REUVEN DUER; ERIC RIEDERS; and DOES 1 through 10, inclusive,<br><br>               Defendants. | Case No.: 17-cv-3159-MEJ<br><br>**AMENDED ANSWER TO SECOND AMENDED COMPLAINT; COUNTERCLAIMS** |
| PLC DIAGNOSTICS, INC., a Delaware corporation; and NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, a Pennsylvania corporation;<br><br>               Counterclaimants,<br><br>    v.<br><br>EUROSEMILLAS, S.A., a Spanish corporation,<br><br>               Counter-<br>               Defendant. | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

1  PLC DIAGNOSTICS, INC., a Delaware
   corporation; NATIONAL MEDICAL
2  SERVICES, INC. dba NMS LABS, a
   Pennsylvania corporation; LDIP, LLC, a
3  Delaware limited liability company; REUVEN
   DUER; and ERIC RIEDERS;
4
                              Third Party
5                             Plaintiffs,
6         v.
7  MOHAN UTTAWAR,
8                             Third Party
                              Defendant.
9

10       Defendants PLC DIAGNOSTICS, INC. ("PLC"), NATIONAL MEDICAL SERVICES,

11  INC. dba NMS LABS ("NMS"), LDIP, LLC ("LDIP"), REUVEN DUER ("Duer") and ERIC

12  RIEDERS ("Rieders") (collectively "Defendants") answer the Second Amended Complaint ("SAC")

13  of EUROSEMILLAS, S.A. ("Plaintiff") herein as follows:

14       1.      Paragraph 1 purports to describe a document that speaks for itself, and Defendants

15  deny the allegations to the extent they differ from the referenced document.

16       2.      Paragraph 2 purports to describe a document that speaks for itself, and Defendants

17  deny the allegations to the extent they differ from the referenced document.

18                                    **PARTIES**

19       3.      Defendants represent that they lack information or belief sufficient to admit or deny

20  the allegations of paragraph 3 of the Complaint, and on that basis deny such allegations.

21       4.      Defendants admit the allegations of paragraph 4 of the Complaint except as to the last

22  sentence, which is denied.

23       5.      Defendants admit the allegations of paragraph 5 of the Complaint.

24       6.      Defendants admit the allegations of paragraph 6 of the Complaint.

25       7.      Defendants admit the allegations of paragraph 7 of the Complaint.

26       8.      Defendants admit the allegations of paragraph 8 of the Complaint.

27

28

1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

## DOES 1 - 10

9.      Defendants represent that they lack information or belief sufficient to admit or deny the allegations in paragraph 9, and on that basis deny such allegations.

10.     Defendants represent that they lack information or belief sufficient to admit or deny the allegations in paragraph 10, and on that basis deny such allegations.

11.     Defendants neither admit nor deny the statement in paragraph 11.

## JURISDICTION & VENUE

12.     Defendants admit the allegations of paragraph 12 of the Complaint.

13.     Defendants admit the allegations of paragraph 13 of the Complaint.

14.     Defendants admit the allegations of paragraph 14 of the Complaint.

## FACTUAL BACKGROUND

15.     Defendants admit the allegations of paragraph 15 of the Complaint.

16.     Defendants admit the allegations of paragraph 16 of the Complaint.

17.     Defendants deny the allegations of paragraph 17 of the Complaint.

18.     Paragraph 18 purports to describe a document that speaks for itself, and Defendants deny its allegations to the extent they differ from the referenced document.

19.     Defendants admit the allegations of paragraph 19 of the Complaint.

20.     Defendants deny the allegations of paragraph 20, except that Defendants admit that iNDx raised $2,100,000 in Series A equity financing.

21.     Defendants admit the allegations of paragraph 21 of the Complaint.

22.     Defendants admit the allegations of paragraph 22 of the Complaint.

23.     Defendants admit the allegations of paragraph 23 of the Complaint.

24.     Defendants admit the allegations of paragraph 24of the Complaint.

25.     Defendants admit the allegations of paragraph 25 of the Complaint.

26.     Defendants represent that they lack information or belief sufficient to admit or deny the allegations of paragraph 26, and on that basis deny such allegations.

27.     Defendants represent that they lack information or belief sufficient to admit or deny the allegations of paragraph 27, and on that basis deny such allegations.

DOCS_LA:309212.7 70872/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

28.     Defendants deny the allegations of paragraph 28 of the Complaint.

29.     Defendants deny the allegations of paragraph 29 of the Complaint.

30.     Defendants admit the allegations of paragraph 30 of the Complaint.

31.     Defendants deny the allegations of paragraph 31 of the Complaint.

32.     Defendants deny the allegations of paragraph 32 of the Complaint.

33.     Defendants deny the allegations of paragraph 33 of the Complaint.

34.     Defendants deny the allegations of paragraph 34 of the Complaint.

35.     Defendants admit the allegations of paragraph 35 of the Complaint.

36.     Defendants deny the allegations of paragraph 36 of the Complaint.

37.     Defendants deny the allegations of paragraph 37 of the Complaint.

38.     Defendants deny the allegations of paragraph 38 of the Complaint.

39.     Defendants deny the allegations of paragraph 39 of the Complaint.

40.     Defendants deny the allegations of paragraph 40 of the Complaint.

41.     Defendants admit giving notice of the foreclosure sale and deny the balance of the allegations of paragraph 41 of the Complaint.

42.     Defendants deny the allegations of paragraph 42 of the Complaint.

43.     Defendants admit that the sale was scheduled for August 12, 2016 and deny the balance of the allegations of paragraph 43 of the Complaint.

44.     Defendants deny the allegations of paragraph 44 of the Complaint.

45.     Defendants deny the allegations of paragraph 45 of the Complaint.

46.     Defendants admit the allegations of paragraph 46 of the Complaint.

47.     Defendants admit the allegations of paragraph 47 of the Complaint.

48.     Defendants admit that the stay was lifted by stipulation on October 19, 2016 and deny the balance of the allegations of paragraph 48 of the Complaint, and on that basis deny such allegations.

49.     Defendants represent that they lack information or belief sufficient to admit or deny the allegations of paragraph 49 of the Complaint, and on that basis deny such allegations.

50.     Defendants admit the allegations of paragraph 50 of the Complaint.

51.     Defendants admit receipt of the referenced letter, which speaks for itself, and deny the balance of the allegations of paragraph 51 to the extent they differ from the referenced document.

52.     Paragraph 52 purports to describe a document that speaks for itself, and Defendants deny its allegations to the extent they differ from the referenced document.

53.     Defendants admit the allegations of paragraph 53 of the Complaint.

54.     Paragraph 54 purports to describe a document that speaks for itself, and Defendants deny its allegations to the extent they differ from the referenced document.

55.     Defendants admit that communications took place and deny that the allegations of paragraph 55 represent a complete or accurate description thereof.

56.     Defendants admit that PLC and NMS rejected a deed in lieu of foreclosure. Defendants represent that they lack sufficient information or belief to admit or deny the balance of the allegations of paragraph 56 of the Complaint, and on that basis deny such allegations.

57.     Defendants deny the allegations of paragraph 57 of the Complaint.

58.     Defendants deny the allegations of paragraph 58 of the Complaint.

59.     Defendants admit a public foreclosure sale was conducted and deny the balance of the allegations of paragraph 59 of the Complaint.

60.     Defendants admit the allegations of paragraph 60 of the Complaint.

61.     Defendants deny the allegation that the auction was conducted in a commercially unreasonable manner.

62.     Paragraph 62 purports to describe a document that speaks for itself, and Defendants deny its allegations to the extent they differ from the referenced document.

63.     Defendants deny the allegations of paragraph 63 of the Complaint.

64.     Defendants deny the allegations of paragraph 64 of the Complaint.

65.     Defendants deny the allegations of paragraph 65 of the Complaint.

66.     Defendants deny the allegations of paragraph 66 of the Complaint.

## FIRST CAUSE OF ACTION
(Breach of Contract Against PLC and NMS)

67.     Defendants PLC and NMS neither admit nor deny this statement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

68.     Defendants PLC and NMS deny the allegations of paragraph 68 of the Complaint.

69.     Defendants PLC and NMS deny the allegations of paragraph 69 of the Complaint.

70.     Defendants PLC and NMS deny the allegations of paragraph 70 of the Complaint.

71.     Defendants PLC and NMS deny the allegations of paragraph 71 of the Complaint.

72.     Defendants PLC and NMS deny the allegations of paragraph 72 of the Complaint.

73.     Defendants PLC and NMS represent that they lack information or belief sufficient to admit or deny the allegations of paragraph 73, and on that basis deny such allegations.

74.     Defendants PLC and NMS deny the allegations of paragraph 74 of the Complaint.

75.      Defendants PLC and NMS admit that discussions took place concerning proposed bridge financing and that NMS insisted that any such financing must be secured *pari passu* with existing secured debt, and deny the balance of the allegations of paragraph 75 of the Complaint.

76.     Defendants PLC and NMS admit that the email was sent.

77.     Defendants PLC and NMS admit than the email was sent.

78.     Defendants PLC and NMS admit the first and the last sentence of these allegations and deny the second sentence of paragraph 78 of the Complaint.

79.     Defendants PLC and NMS represent that the referenced document speaks for itself, and deny the allegations of paragraph 79 except to the extent set forth therein.

80.     Defendants PLC and NMS deny the allegations of paragraph 80 of the Complaint.

81.     Paragraph 81 purports to characterize documents that speak for themselves, and Defendants PLC and NMS deny its allegations to the extent they differ from the referenced documents.

82.     Defendants PLC and NMS admit that the email was sent and deny the balance of the allegations of paragraph 82 to the extent they differ from the referenced document.

83.     Defendants PLC and NMS admit the referenced lunch took place and deny the balance of the allegations of paragraph 83 of the Complaint.

84.     Defendants PLC and NMS deny the allegations of paragraph 84 of the Complaint.

85.     Defendants PLC and NMS deny the allegations of paragraph 85 of the Complaint.

86.     Defendants PLC and NMS deny the allegations of paragraph 86 of the Complaint.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

87.     Defendants PLC and NMS deny the allegations of paragraph 87 of the Complaint.

88.     Defendants PLC and NMS admit the allegations of paragraph 88 of the Complaint.

89.      Defendants PLC and NMS deny the allegations of paragraph 89 of the Complaint.

90.     Defendants PLC and NMS deny the existence of a valid Intercreditor Agreement with Plaintiff and that Plaintiff has any right of joint ownership and on that basis deny the allegations of paragraph 90 of the Complaint.

91.     Defendants PLC and NMS deny the allegations of paragraph 91 of the Complaint.

92.     Defendants PLC and NMS deny the allegations of paragraph 92 of the Complaint.

93.     Defendants PLC and NMS deny the allegations of paragraph 93 of the Complaint.

94.     Defendants PLC and NMS neither admit nor deny this statement.

95.     Defendants PLC and NMS deny the allegations of paragraph 95 of the Complaint.

96.     Defendants PLC and NMS deny the allegations of paragraph 96 of the Complaint.

97.     Defendants PLC and NMS deny the allegations of paragraph 97 of the Complaint.

98.     Defendants PLC and NMS deny the allegations of paragraph 98 of the Complaint.

## SECOND CAUSE OF ACTION
(Breach of Implied Covenant of Good Faith and Fair Dealing
Against PLC and NMS)

99.     Defendants PLC and NMS neither admit nor deny this statement.

100.     Defendants PLC and NMS deny the allegations of paragraph 100 of the Complaint.

101.     Defendants PLC and NMS admit that PLC appointed two directors and deny the balance of the allegations of paragraph 101 of the Complaint.

102.     Defendants PLC and NMS deny the allegations of this paragraph of the Complaint.

103.     Defendants PLC and NMS deny the allegations of paragraph 103 of the Complaint, except that NMS hosted Cano and Merino at the request of Mohan Uttarwar.

104.     Defendants PLC and NMS represent that they lack information or belief sufficient to admit or deny the allegations of paragraph 104 of the Complaint, and on that basis deny such allegations.

105.     Defendants PLC and NMS deny the allegations of paragraph 105 of the Complaint

106.     Defendants PLC and NMS deny the allegations of paragraph 106 of the Complaint

DOCS_LA:309212.7 70872/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

107.     Defendants PLC and NMS deny the allegations of paragraph 107 of the Complaint.

108.     Defendants PLC and NMS deny the allegations of paragraph 108 of the Complaint.

109.     Defendants PLC and NMS deny the allegations of paragraph 109 of the Complaint.

110.     Defendants PLC and NMS admit the allegations of paragraph 110 of the Complaint.

111.     Defendants PLC and NMS deny that they gave "repeated assurances" and represent that they lack information and belief sufficient to admit or deny the balance of the allegations of paragraph 111 of the Complaint, and on that basis deny such allegations.

112.     Defendants PLC and NMS represent that they lack information or belief sufficient to admit or deny the allegations of paragraph 112 of the Complaint, and on that basis deny such allegations.

113.     Defendants PLC and NMS represent that they lack information or belief sufficient to admit or deny the allegations of paragraph 113 of the Complaint, and on that basis deny such allegations.

114.     Defendants PLC and NMS deny the allegations of paragraph 114 of the Complaint.

115.     Defendants PLC and NMS deny the allegations of paragraph 115 of the Complaint.

116.     Defendants PLC and NMS deny the allegations of paragraph 116 of the Complaint.

### <u>THIRD CAUSE OF ACTION</u>
(Fraud in the Inducement Against
Reuven Duer, Eric Rieders, PLC and NMS)

117.     Defendants neither admit nor deny this statement.

118.     The allegations of paragraph 118 of the Complaint express legal conclusions that Defendants neither admit nor deny.

119.     The allegations of paragraph 119 of the Complaint express legal conclusions that Defendants neither admit nor deny.

120.     Defendants deny the allegations of paragraph 120 of the Complaint.

121.     Defendants deny the allegations of paragraph 121 of the Complaint.

122.     Defendants represent that they lack information or belief sufficient to admit or deny the allegations of paragraph 122 of the Complaint, and on that basis deny such allegations.

123.      Defendants deny the allegations of paragraph 123 of the Complaint.

DOCS_LA:309212.7 70872/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

124.    Defendants deny the allegations of paragraph 124 of the Complaint.

125.    Defendants deny the allegations of paragraph 125 of the Complaint.

126.    Defendants admit that a meeting took place and deny the balance of the allegations of paragraph 126 of the Complaint.

127.    Defendants deny the allegations of paragraph 127 of the Complaint.

128.    Defendants deny the allegations of paragraph 128 of the Complaint.

129.    Defendants deny the allegations of paragraph 129 of the Complaint.

130.    Defendants deny the allegations of paragraph 130 of the Complaint.

131.    Defendants deny the allegations of paragraph 131 of the Complaint.

132.    Defendants deny the allegations of paragraph 132 of the Complaint.

133.    Defendants deny the allegations of paragraph 133 of the Complaint.

## **FOURTH CAUSE OF ACTION**
(Unfair Competition Against
Reuven Duer, Eric Rieders, PLC and NMS)

134.    Defendants neither admit nor deny this statement.

135.    Defendants deny the allegations of paragraph 135 of the Complaint.

136.    Defendants deny the allegations of paragraph 136 of the Complaint.

137.    Defendants deny the allegations of paragraph 138 of the Complaint.

138.    Defendants admit that Duer served as a director and Rieders served as chairman of the iNDx board, and deny the balance of the allegations of paragraph 138 of the Complaint.

139.    Defendants deny the allegations of paragraph 139 of the Complaint.

140.    Defendants deny the allegations of paragraph 140 of the Complaint.

141.    Defendants deny the allegations of paragraph 141 of the Complaint.

142.    Defendants deny the allegations of paragraph 142 of the Complaint.

143.    Defendants admit the email referenced in paragraph 143 of the Complaint was sent.

144.    Defendants deny the allegations of paragraph 144 of the Complaint.

145.    Defendants deny the allegations of paragraph 145 of the Complaint.

146.    Defendants deny the allegations of paragraph 146 of the Complaint.

147.    Defendants deny the allegations of paragraph 147 of the Complaint.

DOCS_LA:309212.7 70872/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

148. Defendants deny the allegations of paragraph 148 of the Complaint.

149. Defendants deny the allegations of paragraph 149 of the Complaint.

150. Defendants deny the allegations of paragraph 150 of the Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

#### (Failure to State a Claim)

151. The Complaint, and each and every purported cause of action contained therein, fails to state facts sufficient to constitute any cause of action against Defendants.

### SECOND AFFIRMATIVE DEFENSE

#### (Standing)

152. Plaintiff lacks standing to bring the claims alleged in the Complaint,

### THIRD AFFIRMATIVE DEFENSE

#### (Waiver)

153. Defendants allege on information and belief that Plaintiff has engaged in conduct and activities sufficient to constitute a waiver of any claims and demands it may have against Defendants.

### FOURTH AFFIRMATIVE DEFENSE

#### (Prior Breach / Failure to Perform)

154. Plaintiff is barred from any recovery sought in the Complaint due to its prior breach and/or failure to perform obligations under the purported contracts alleged in the Complaint.

### FIFTH AFFIRMATIVE DEFENSE

#### (Estoppel)

155. Defendants allege on information and belief that the Complaint as a whole, and each and every cause of action contained therein, is barred by reasons of acts, omissions, representations by Plaintiff or its agents upon which Defendants relied to their detriment, thereby barring under the doctrine of equitable estoppel any cause of action asserted by Plaintiff.

9

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

## SIXTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate)

156.    The Complaint, and each and every purported claim or cause of action contained therein, is barred to the extent Plaintiff has failed to exercise reasonable care and diligence to avoid, minimize, or otherwise mitigate any alleged injury or damage.

## SEVENTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

157.    Defendants allege on information and belief that Plaintiff has unclean hands and therefore is barred from asserting any of the claims made in the Complaint and obtaining any relief thereon.

## EIGHTH AFFIRMATIVE DEFENSE

### (Offset)

158.    By virtue of the acts, omissions and misrepresentations of Plaintiff, and by virtue of Plaintiff's breaches of the purported contracts alleged in the Complaint, Defendants have incurred damages and expenses in amounts to be determined and applied as an offset against the claims of the Plaintiff.

## NINTH AFFIRMATIVE DEFENSE

### (Uncertainty)

159.    The purported contract upon which Plaintiff brings this action is unenforceable because its material terms are uncertain.

## TENTH AFFIRMATIVE DEFENSE

### (Failure to Enter Into Contract)

160.    The purported contract upon which Plaintiff brings this action is unenforceable because it was not fully executed and was not intended to be effective unless fully executed.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Performance of Contract)

161.    To the extent the purported contract upon which Plaintiff brings this action is enforceable, Defendants performed all obligations thereunder.

DOCS_LA:309212.7 70872/002

**TWELFTH AFFIRMATIVE DEFENSE**

**(Satisfaction)**

162.    Any obligation to Plaintiff has already been satisfied in part or in full, including, without limitation, by the unauthorized payment by Mohan Uttawar to or for the benefit of Plaintiff in the amount of $100,000.

**THIRTEENTH AFFIRMATIVE DEFENSE**

**(Reservation of Additional Defenses)**

163.    Defendants presently have insufficient knowledge or information on which to form a belief as to whether it may have additional affirmative defenses that may become apparent or available during discovery, and therefore reserve the right to assert additional applicable defenses.

**WHEREFORE**, Defendants pray that judgment be entered as follows:

      a.    That Plaintiff take nothing by reason of its Complaint;

      b.    That Defendants be awarded attorneys' fees and costs of suit;

      c.    For such other relief as is just and proper.

**COUNTERCLAIMS**

By and for their Counterclaims against Plaintiff Eurosemillas, S.A., counterclaimants PLC DIAGNOSTICS, INC., NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, LDIP, LLC, REUVEN DUER and ERIC RIEDERS (collectively "Counterclaimants") allege as follows:

**PARTIES**

1.    Eurosemillas, S.A. ("Eurosemillas", "Spanco" or "Counterdefendant"), is a Spanish corporation with its principal office in Cordoba, Spain, and is the plaintiff in the Second Amended Complaint in the above-captioned action (the "Complaint").

2.    National Medical Services, Inc. ("NMS") is a corporation organized under the laws of Pennsylvania with its principal place of business in Willow Grove, Pennsylvania.

3.    PLC Diagnostics, Inc. ("PLC") is a corporation organized under the laws of Delaware with its principal place of business in Thousand Oaks, California.

4.    LDIP, LLC ("LDIP"), is a limited liability company organized under the laws of Delaware.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

5.      Reuven Duer is an individual domiciled in California.

6.      Eric Rieders is an individual domiciled in Pennsylvania.

7.      Mohan Uttarwar ("Uttarwar") is an individual domiciled in California and is a defendant in the Third Party Complaint filed in this action by Defendants/Counterclaimants.

8.      Piyush Gupta ("Gupta") is an individual domiciled in California and is a defendant in the Third Party Complaint filed in this action by Defendants/Counterclaimants.

## JURISDICTION AND VENUE

9.      The Court has original jurisdiction pursuant to 28 U.S.C. § 1332(a) because it is an action between citizens of the United States and a citizen of a foreign state, and the amount in controversy exceeds $75,000, exclusive of interests and costs.

10.     The Court also has supplemental jurisdiction over the counterclaims pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy as the claims in the Complaint over which the Court has original jurisdiction.

11.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

12.     iNDx Lifecare, Inc. ("iNDx") was formed pursuant to a Joint Venture Agreement ("JV Agreement") between PLC and iNDx Technology, Inc., dated December 27, 2013.

13.     Uttarwar was at all relevant times a member of iNDx' Board of Directors and acted as Chief Executive Officer of iNDx until January 31, 2016.

14.     Gupta became a member of the iNDx Board of Directors on February 12, 2016 and thereafter also became the Managing Consultant of iNDx on June 30, 2016.

A.      **iNDx Agreements With PLC and NMS**

15.     iNDx issued to PLC a Secured Convertible Promissory Note, dated December 27, 2013, in the principal amount of $3,100,000.00 and a maturity date of December 31, 2018 (the "PLC Note").  iNDx's obligations under the PLC Note were secured by a pledge of all of iNDx's right, title and interest in patents and other intellectual property, as identified in that agreement (collectively, the "Collateral"), pursuant to a Security Agreement from iNDx to PLC, dated

December 27, 2013 (the "PLC Security Agreement").  PLC recorded a UCC-1 financing statement on September 24, 2014.  At all relevant times, Eurosemillas knew of the PLC Note and PLC Security Agreement.

16.　　NMS provided secured debt financing to iNDx pursuant to a Secured Convertible Note dated November 15, 2014, in the principal amount of $1,000,000, with a maturity date of December 31, 2015 (the "NMS Note").  At all relevant times, Eurosemillas knew of the NMS Note.

17.　　NMS provided additional secured debt financing to iNDx pursuant to a Secured Convertible Promissory Note, dated May 27, 2015 in the principal amount of $500,000 (the "Second NMS Loan" and together with the NMS Loan, the "NMS Loans").  At all relevant times, Eurosemillas knew of the NMS Loans.

18.　　iNDx's obligation under the NMS Notes and related documents are secured by a pledge of the same Collateral pledged to PLC pursuant to a Security Agreement dated October 28, 2014 (the "Original NMS Security Agreement"), as amended by the First Amendment to the Security, dated May 27, 2015 (together the "NMS Security Agreements").  NMS recorded a UCC-1 financing statement on October 30, 2014.  At all relevant times, Eurosemillas knew of the NMS Security Agreements.

19.　　NMS and iNDx are parties to a Product Development Agreement ("PDA") and License Agreement ("License Agreement"), dated August 1, 2014.  Under the PDA and License Agreement, NMS had, among other rights, exclusive commercialization rights world-wide (outside of India) for all products that iNDx was developing under the PDA and the NMS License.

20.　　The PDA provides, in part, at ¶ 3.1.2 that:

> Pursuant to the License Agreement, NMS shall have the exclusive license, right and title to sell, market and distribute in any and all territories in the world (other than in India) Product(s) for use in the Field, along with a nonexclusive license, right and title to sell, market and distribute in any and all territories in the world (other than in India) Product(s) for use in the Alternate Field.

"Field" and "Alternate Field" refer to defined categories of products that iNDx was developing under the PDA and under license from NMS (the "NMS License").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

21.     Uttarwar executed the PDA and License Agreement on behalf of iNDx and was and is knowledgeable concerning their provisions and with the intellectual property and products covered by the License Agreement.

22.     On information and belief, Eurosemillas knew of the PDA and the License Agreement.

23.     iNDx, PLC and NMS executed an intercreditor agreement dated on or about October 28, 2014 (the "Original Intercreditor Agreement").  Concurrent with the Second NMS Loan and Second NMS Security Agreement, the parties executed a First Amendment to the Intercreditor Agreement, dated on or about June 2, 2015 (the "First Amendment " and in conjunction with the Original Intercreditor Agreement, the "Intercreditor Agreement").  The Intercreditor Agreement provided in summary, and in relevant part, that the PLC Note and NMS Notes, and their respective liens on the Collateral, would be treated on a *pari passu*, pro rata basis.  At all relevant times, Eurosemillas knew of the Original Intercreditor Agreement and the First Amendment.

**B.      Uttarwar's False Promises and Eurosemillas' False Claims**

24.     Eurosemillas is a Spanish company of which a friend of Uttarwar, Javier Cano, was and is a principal.  Eurosemillas alleges in the Complaint that in approximately March 2014, it invested $200,000 as a participant in iNDx' $2,100,000 Series A equity financing.

25.     Eurosemillas alleges in the Complaint that it was induced to participate in the Series A financing by misrepresentations by PLC and Duer concerning the state of the technology provided by PLC to iNDx, and specifically that the technology would be ready to be marketed in six months.

26.     PLC and Duer made no such representations to Uttarwar or to Eurosemillas.  If any misrepresentations concerning the state of iNDx's technology were made to Eurosemillas, they were made by Uttarwar.  Eurosemillas is aware of this fact.

27.     Eurosemillas alleges in the Complaint that it made a loan in the principal amount of $250,000 to iNDx (the "Spanco Loan") pursuant to a Secured Convertible Promissory Note dated January 28, 2015, with a maturity date of March 31, 2016 (the "Spanco Note").

14

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

28.     Eurosemillas alleges in the Complaint that iNDx' obligations under the Spanco Note were secured by a Security Agreement dated three months earlier, on October 24, 2014 (the "<u>Spanco Security Agreement</u>").  A UCC-1 financing statement was not recorded until November 19, 2015.

29.     Eurosemillas alleges further that it was promised that the Spanco Note would be secured by a lien on the Collateral and treated on a *pari passu*, pro rata basis with the PLC Note and the NMS Note.  It alleges PLC's and NMS's agreement is evidenced by a document filed with the Court, purporting to be an intercreditor agreement dated October 22, 2014, executed by Eurosemillas, iNDx, and PLC but not by NMS (the "<u>Fraudulent Eurosemillas Intercreditor Agreement</u>").

30.     Counterclaimants are informed and believe, and on that basis allege, that Eurosemillas was also promised by Uttarwar that Eurosemillas would have exclusive commercialization rights for certain iNDx intellectual property in Europe and Latin America.

31.     There was no October 22, 2014 intercreditor agreement with Eurosemillas.  There was no Spanco Security Agreement as of October 24, 2014.  There was no Spanco Note as of January 28, 2015.  Eurosemillas knew such facts at all relevant times.

32.     Counterclaimants are informed and believe, and on that basis allege, that $250,000 was received from Eurosemillas on November 5, 2014, but on the same day, without board approval, Uttarwar wired back approximately $100,000 for use by Javier Cano, ostensibly in connection with a Eurosemillas-controlled entity, iNDx Europe, that was essentially a shell with no cash flow or activities.

33.     Eurosemillas alleges in the Complaint that the iNDx Board of Directors approved the Spanco Loan on a *pari passu*, pro rata basis at a board meeting on January 28, 2015.  The Spanco Loan was not approved on any basis at the January 28, 2015 board meeting.  Any representation to Eurosemillas to that effect was made by Uttarwar.  Board approval would not in any event have constituted authorization by PLC and NMS under the Intercreditor Agreement to enter into the Spanco Loan.

34.     At the time the Spanco Loan was allegedly made, PLC and NMS had not been advised of the Spanco Loan and had not been asked to enter into any intercreditor agreement with

DOCS_LA:309212.7 70872/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

Eurosemillas, and had not been asked to cede any distribution rights to Eurosemillas.  Any such promises or representations to Eurosemillas was made by Uttarwar, without the knowledge or consent of PLC or NMS.

35.     Uttarwar's inducement and agreement to treat a loan by Eurosemillas on a *pari passu* basis with the PLC Note and the NMS Note violated the rights of PLC and NMS under their Intercreditor Agreement with iNDx.  Eurosemillas was aware of the Intercreditor Agreement at all relevant times.

36.     Uttarwar's inducement and agreement to grant European and Latin American commercialization rights to Eurosemillas violated the rights of NMS under its PDA and License Agreement with iNDx.

37.     PLC and NMS were first asked to amend their Intercreditor Agreement to include Eurosemillas in or around early August, 2015.  At no time was PLC or NMS obligated to enter into any intercreditor agreement with Eurosemillas.

38.     Uttarwar was advised on August 4, 2015 that a proffered form of intercreditor agreement was unacceptable to the existing parties to the Intercreditor Agreement, and that the document required revision and that documentation of the Spanco Loan, including the executed Spanco Note and Spanco Security Agreement must be provided.

39.     Counterclaimants are informed and believe, and on that basis allege, that the Fraudulent Eurosemillas Intercreditor Agreement was created by taking a signature page executed by Duer and attaching it to the rejected document and backdating the document to October 22, 2014. Its submission as evidence that, as of October 22, 2014, there was a final intercreditor agreement with Eurosemillas on those terms that was simply missing one signature, is fraudulent.

40.     Eurosemillas knew that the Fraudulent Eurosemillas Intercreditor Agreement was not an intercreditor agreement that was final as of October 22, 2014 but for a missing signature.

41.     A revised draft intercreditor agreement was circulated by iNDx counsel on August 7, 2015.  It bore a placeholder date of "January __, 2015" that was represented by iNDx counsel to be an approximation of the date the Spanco Loan was made.  As of that date, there was no executed Spanco Note or Spanco Security Agreement.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

42.     The draft form of intercreditor agreement with Eurosemillas originally circulated in August, 2015 was never executed, but was used as a starting point for a proposed second amendment to the Intercreditor Agreement in March 2016.

43.     In the interim, as of December 10, 2015, NMS had begun providing secured and unsecured bridge financing to iNDx that was not covered by the Intercreditor Agreement, amounting to approximately $300,000 by January 2016.

44.     As of March 2016, NMS negotiated to obtain, in part, *pari passu* treatment of its additional funding with the existing and thus more senior secured debt.  That existing debt included the Spanco Note, which though junior to the PLC Note and NMS Note, was senior to the additional NMS loans.

45.     Drafts were prepared using as a starting point the unsigned August 2015 draft (with its intentionally fictional "January __, 2015" date).  These interlineated drafts refer to the Original Intercreditor Agreement and the First Amendment, and not to the Fraudulent Eurosemillas Intercreditor Agreement or any other purported agreement with Eurosemillas.

46.     Eurosemillas received a proposed second amendment on March 11, 2016.  Although part of the parties' prospective concessions included the consent by NMS and PLC to the *pari passu* treatment of the Spanco Note, Eurosemillas elected not to sign or even to propose revisions.

47.     Thereafter, on July 14, 2016, PLC and NMS noticed a foreclosure sale of the Collateral for August 12, 2016.  iNDx commenced a bankruptcy case in the United States Bankruptcy Court for the Northern District of California on August 11, 2016.  iNDx stipulated to relief from the automatic stay on October 19, 2016, and the foreclosure sale was conducted on November 4, 2015.  PLC and NMS, acting through an affiliate, LDIP, acquired the Collateral for a credit bid of $1,000,000.  The bankruptcy case was dismissed.

48.     On or about December 24, 2016, about two months after the foreclosure sale, Gupta executed a Quitclaim Assignment of any interests in and to the intellectual property constituting the Collateral to Eurosemillas, which Quitclaim Assignment recites as a purported fact that Eurosemillas received *pari passu* rights in the Collateral pursuant to the Fraudulent Eurosemillas Intercreditor Agreement.

17

49.     Eurosemillas has claimed and now alleges in its Complaint that during the second half of 2015 and the first half of 2016, PLC and NMS "conspired" to "plunder" their Collateral, including by blocking various restructuring or refinancing proposals that would allegedly have prevented iNDx from becoming insolvent.  Eurosemillas further contends in the Complaint that the foreclosure was void, that it has a joint tenancy ownership interest in the Collateral (including under the purported Quitclaim Assignment executed by Gupta upon false representations of fact), and that it is entitled to exclusive general commercialization rights in the European Union and Latin America for all products using iNDx intellectual property.

50.     Probable cause did and does not exist for the filing of the Complaint, as the factual allegations are unfounded and no legal basis exists for such remedies.  NMS and PLC made numerous attempts and proposals to assist iNDx and thereby preserve their own investments, and in each instance, without exception, those efforts were blocked or impaired by actions or inactions by Eurosemillas itself, or by actions or inactions of Uttarwar and Gupta motivated by self-interest, in breach of their fiduciary duties of care, loyalty and good faith to shareholders and creditors of an insolvent company.  Before and after the foreclosure, Eurosemillas had and has no rights in the intellectual property that constituted the Collateral as it has asserted, and its claim and exercise of exclusive commercialization rights in Europe and Latin America have been and continue to be in violation of NMS's rights under the PDA and License Agreement and LDIP's ownership rights.

51.     Counterclaimants are informed and believe, and on that basis allege, that Uttarwar and Gupta induced Eurosemillas to bring litigation without probable cause by, in part, offering a joint venture, partnership or similar arrangement to Eurosemillas in the event that Eurosemillas prevails in the lawsuit, and that Eurosemillas has induced Uttarwar and Gupta to provide support for the litigation on the same basis.

## FIRST COUNTERCLAIM
(Intentional Interference with Contractual Relations – Intercreditor Agreement by PLC and NMS)

52.     Counterclaimants PLC and NMS incorporate by this reference the allegations in paragraphs 1-50 hereof.

18

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

53.     At all relevant times, PLC, NMS and iNDx were parties to the Intercreditor Agreement.

54.     Eurosemillas had knowledge of the Intercreditor Agreement.

55.     In engaging in the conduct alleged herein, including without limitation by inducing litigation without probable cause and providing litigation support, has prevented performance of the Intercreditor Agreement or made performance more expensive or difficult.

56.     Eurosemillas intended to disrupt performance of the Intercreditor Agreement, or knew that disruption of performance was certain or substantially certain to occur.

57.     As a result of such conduct, PLC and NMS have suffered or will suffer harm.

58.     Eurosemillas' conduct was a substantial factor in causing such harm.

59.     In engaging in the conduct alleged herein, Eurosemillas acted with a willful and conscious disregard of the rights of others, and is guilty of oppression, fraud or malice, entitling PLC and NMS to an award of exemplary damages.

60.     To the extent monetary damages are insufficient to adequately recompense PLC and NMS, said Counterclaimants are entitled to an injunction to prevent Eurosemillas and those acting in concert with it from asserting any interest in the Collateral or undertaking any effort to market or exploit those rights.

## SECOND COUNTERCLAIM

(Intentional Interference with Contractual Relations – Product Development Agreement and License Agreement by NMS)

61.     Counterclaimant NMS incorporates by this reference the allegations in paragraphs 1-60 hereof.

62.     At all relevant times, NMS and iNDx were parties to the PDA and License Agreement.

63.     Eurosemillas learned of the PDA and License Agreement and NMS' rights thereunder by no later than Summer 2016, or at an earlier time to be established, and sought distribution rights that it did not receive.

64.     After learning of such rights and knowing that it lacked distribution rights, Eurosemillas continued to claim and attempt to exercise commercialization rights granted to NMS in

19

the PDA and License Agreement in the European Union and Latin America. In engaging in the conduct alleged herein, Eurosemillas' conduct prevented performance of the PDA and License Agreement or made performance more expensive or difficult.

65. Eurosemillas intended to disrupt performance of the PDA and License Agreement, or knew that disruption of performance was certain or substantially certain to occur.

66. As a result of such conduct, NMS has suffered or will suffer harm.

67. Eurosemillas' conduct was a substantial factor in causing such harm.

68. In engaging in the conduct alleged herein, Eurosemillas acted with a willful and conscious disregard of the rights of others, and is guilty of oppression, fraud or malice, entitling PLC and NMS to an award of exemplary damages.

69. To the extent monetary damages are insufficient to adequately recompense NMS, said Counterclaimant is entitled to an injunction to prevent Eurosemillas and those acting in concert with it from asserting any distribution rights in the intellectual property constituting the Collateral.

### THIRD COUNTERCLAIM
(By NMS and PLC for Declaratory Relief)

70. Counterclaimants NMS and PLC incorporate by this reference the allegations in paragraphs 1-69 hereof.

71. Eurosemillas asserts an interest in the Collateral and purported distribution rights to the intellectual property forming the Collateral in the European Union and Latin America markets.

72. PLC and NMS dispute that Eurosemillas has any rights to the Collateral nor any distribution rights to the subject intellectual property anywhere in the world, including the European Union and Latin America markets.

73. A controversy therefore exists requiring Court determination.

74. Counterclaimants therefore request the Court to issue a judgment declaring that Eurosemillas has no rights in the Collateral and no rights to distribute the intellectual property constituting the Collateral.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

**WHEREFORE**, Counterclaimants pray that judgment be entered as follows:

a.      On the first counterclaim, for an award of compensatory damages to PLC and NMS in an amount to be established at trial;

b.      On the second counterclaim, for an award of compensatory damages to NMS in an amount to be established at trial;

c.      On the second counterclaim, an injunction to prevent continued assertion of distribution rights to the Collateral;

d.      On the first and second counterclaims, for an award of exemplary damages in an amount to be established at trial.

e.      On the third counterclaim, a judgment declaring Eurosemillas has no rights in the Collateral and no distribution rights to the intellectual property constituting the Collateral;

f.      For an award of attorneys' fees and costs of suit; and

g.      For such other relief as is just and proper.

Dated:   October  17, 2017            PACHULSKI STANG ZIEHL & JONES LLP

By: _____*/s/ Harry D. Hochman*_____
                Steven J. Kahn
                Harry D. Hochman
                Attorneys for PLC DIAGNOSTICS, INC.,
                NATIONAL MEDICAL SERVICES, INC., LDIP,
                LLC, REUVEN DUER and ERIC RIEDERS

DOCS_LA:309212.7 70872/002

## **PROOF OF SERVICE**

STATE OF CALIFORNIA           )
                                )
COUNTY OF LOS ANGELES     )

    I, Mary de Leon, am employed in the city and county of Los Angeles, State of California.  I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067.

    On October 17, 2017, I caused to be served the *AMENDED ANSWER TO SECOND AMENDED COMPLAINT; COUNTERCLAIMS* in this action as follows:

☐ (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing.  Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business.  I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐ (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address.

☑ (BY NOTICE OF ELECTRONIC FILING) I caused to be served the above-described document by means of electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, for parties and/or counsel who are registered ECF Users.

☐ (BY FAX) I caused to be transmitted the above-described document by facsimile machine to the fax number(s) as shown.  The transmission was reported as complete and without error.  (Service by Facsimile Transmission to those parties on the attached List with fax numbers indicated.)

☑ (BY OVERNIGHT DELIVERY) I caused to be served the above-described document by sending by Federal Express to the addressee(s) as indicated on the attached list.

    I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

    Executed on October 17, 2017, at Los Angeles, California.

                        */s/ Mary de Leon*
                        Mary de Leon

# SERVICE LIST

**By FedEx Delivery:**

Magistrate Judge Maria-Elena James
San Francisco Courthouse
Courtroom B – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**3:17-cv-03159-MEJ Notice will be sent via NEF/electronically mailed to:**

- **Ruchit Kumar Agrawal**
  ruchit@kumarlawsv.com
- **Reuven Duer**
  ruvduer@gmail.com
- **Harry David Hochman**
  hhochman@pszjlaw.com
- **PLC Diagnostics Inc.**
  ruvduer@gmail.com
- **Eric Rieders**
  Eric.Rieders@nmslabs.com