| | |
|---|---|
| 1 | Steven J. Kahn (CA Bar No. 76933) |
| | Harry D. Hochman (CA Bar No. 132515) |
| 2 | PACHULSKI STANG ZIEHL & JONES LLP |
| | 150 California Street, 15th Floor |
| 3 | San Francisco, CA 94111-4500 |
| | Telephone: 415.263.7000 |
| 4 | Facsimile: 415.263.7010 |
| | Email: skahn@pszjlaw.com |
| 5 |       hhochman@pszjlaw.com |
| 6 | Attorneys for PLC DIAGNOSTICS, INC., |
| | NATIONAL MEDICAL SERVICES, INC., |
| 7 | LDIP, LLC, REUVEN DUER and ERIC RIEDERS |

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUROSEMILLAS, S.A., a Spanish corporation, | Case Number: 17-cv-3159-MEJ |
| Plaintiff/Counter-Defendant, | |
| vs. | UNILATERAL CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER |
| PLC DIAGNOSTICS, INC., a Delaware corporation; NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, a Pennsylvania corporation; LDIP, LLC, a Delaware limited liability company; REUVEN DUER; ERIC RIEDERS; and DOES 1 through 10, inclusive, | Date: October 26, 2017<br>Time: 10:00 a.m.<br>Place: Courtroom B |
| Defendants/Counterclaimants. | |
| PLC DIAGNOSTICS, INC., a Delaware corporation; NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, a Pennsylvania corporation; LDIP, LLC, a Delaware limited liability company; REUVEN DUER; and ERIC RIEDERS; | |
| Third Party Plaintiffs, | |
| vs. | |
| MOHAN UTTARWAR, an individual, and PIYUSH GUPTA, an individual, | |
| Third Party Defendants. | |



The Defendants, Counterclaimants and Third Party Plaintiffs to the above-entitled action submit this UNILATERAL CASE MANAGEMENT STATEMENT & PROPOSED ORDER pursuant to the Standing Order for All Judges of the Northern District of California dated July 1, 2011 and Civil Local Rule 16-9.

1. Jurisdiction & Service

*The basis for the court's subject matter jurisdiction over plaintiff's claims and defendant's counterclaims, whether any issues exist regarding persona jurisdiction or venue, whether any parties remain to be served, and, if any parties remain to be served, a proposed deadline for service.*

Complaint: Jurisdiction is based on 28 U.S.C. § 1332(a) because it is between citizens of the United States and a citizen of a foreign state.

Counterclaims: The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367(a) over the claims asserted because they are so related to the claims in the action within the Court's original jurisdiction that they form part of the same case controversy under Article III of the United States Constitution.

Venue: There are no known issues regarding personal jurisdiction or venue.

Status of Service: All Defendants have appeared and the counterclaims have been electronically served through ECF. The Third Party Defendants have yet to be served with the Third Party Complaint filed October 17, 2017, but service is anticipated to be effected within ten days (barring any presently unknown impediments to service).

2. Facts

*A brief chronology of the facts and a statement of the principal factual issues in dispute.*

An entity named iNDx Lifecare, Inc. ("iNDx") was formed pursuant to a joint venture agreement between iNDx Technology, Inc. and Defendant PLC Diagnostics, Inc. ("PLC") dated December 27, 2013. Third Party Defendant Mohan Uttarwar ("Uttarwar") was at all times a member of iNDx's board of directors and was the chief executive officer of iNDx until January 31, 2016. Third Party Defendant Piyush Gupta ("Gupta") became a member of the iNDx board of directors on February 12, 2016.

PLC held a $3.1 million promissory note executed by iNDx secured by a pledge of all of iNDx's right, title and interest in patents and other intellectual property PLC transferred to iNDx (the "Collateral"). In August, 2014, Defendant National Medical Services, Inc. ("NMS") and iNDx entered into a Product Development Agreement ("PDA") and License Agreement ("License Agreement"), pursuant to which NMS was granted exclusive commercialization rights worldwide (outside of India) for all products that iNDx was developing under the PDA. In November, 2014, NMS loaned iNDx $1 million, and in May, 2015, it loaned an additional $500,000, both loans being secured by the Collateral.

iNDx, PLC and NMS executed an intercreditor agreement on or about October 28, 2014, which was later amended on June 2, 2015, to include the second NMS loan. The intercreditor agreement provided in relevant part that the debts to PLC and NMS and their respective liens on the Collateral would be treated on a *pari passu*, pro rata basis.

Eurosemillas ("Spanco" or "Plaintiff") is a Spanish company of which a friend of Uttarwar, Javier Cano, was and is principal. Plaintiff alleges that it purchased $200,000 of iNDX stock in Spring 2014 and that it made a $250,000 loan to iNDx pursuant to a January 28, 2015 promissory note, secured by a lien on the Collateral granted by what purports to be a November 2014 security agreement. Plaintiff alleges that it was promised the note would be secured by a lien on the Collateral and treated on a *pari passu*, pro rata basis with the PLC and NMS notes. It filed with the Court as evidence of such an agreement a document purporting to be an intercreditor agreement dated October 22, 2014, purportedly executed by Plaintiff, iNDx and PLC, but not NMS (the "Fraudulent Eurosemillas Intercreditor Agreement"). Plaintiff further alleges that a loan on such terms was approved at an iNDx board of directors meeting on January 28, 2015. Plaintiff also contends that it was promised exclusive commercialization rights in certain iNDx intellectual property in Europe and Latin America, rights that belong to NMS under the PDA and License Agreement. Finally, Plaintiff contends it was misled about the status of iNDx's technology by Defendants PLC and Duer.

In fact, without exception, any such promises or representations to Plaintiff of any kind were made solely by Uttarwar, without Defendants' knowledge or consent. All "evidence" thereof is fraudulent or backdated. Specifically: (a) any loan by Plaintiff was made in November 2014; (b) Defendants were not even aware of any loan by Plaintiff at the time it was made; (c) no intercreditor agreement with Plaintiff existed, even partially executed; (d) no security agreement existed as of November 2014; (e) no promissory note existed as of the purported January 28, 2015 date; (f) NMS was not aware of any promise of commercialization rights to Plaintiff and did not consent; (g) it was not until August 2015 that PLC and NMS were even asked to treat Plaintiff's loan on a *pari passu*, pro rata basis; (h) even at that late date, no loan agreement or security agreement with Plaintiff existed, much less an intercreditor agreement; (i) an intercreditor agreement was discussed but never finalized in part because Plaintiff's loan had never been documented; and (j) an offer was made to Plaintiff in March 2016 to join the intercreditor agreement, as part of discussions concerning further bridge financing by NMS, but Plaintiff chose not to sign or negotiate it.

Defendants contend that the Fraudulent Eurosemillas Intercreditor Agreement was created by taking a signature page from an agreement that Uttarwar knew had been rejected, and attaching it to a document that was backdated to October 22, 2014. Its submission to the Court as evidence that there was a final agreement as of that date, that simply lacked one signature, was fraudulent.

On or about July 14, 2016, PLC and NMS noticed a foreclosure sale of the Collateral for August 12, 2016. iNDx filed for bankruptcy on August 11, 2016, but later stipulated to relief from the automatic stay on October 19, 2016, and the foreclosure sale was conducted on November 4, 2016. Defendants PLC and NMS, acting through an affiliate, Defendant LDIP, LLC ("LDIP"), acquired the Collateral for a credit bid of $1 million. The bankruptcy was subsequently dismissed.

Thereafter, Third Party Defendant Gupta executed a quitclaim assignment of any of iNDx's interests in and to the Collateral to Plaintiff, falsely reciting that Plaintiff had received *pari passu* rights on the Collateral pursuant to the Fraudulent Eurosemillas Intercreditor Agreement.

Through a succession of lawyers, Plaintiff has claimed and continues to claim that the foreclosure was void, that it has a "tenancy in common" ownership interest in the Collateral and that


American Legal Net, Inc.

it is entitled to exclusive general commercialization rights in the European Union and Latin America. Plaintiff asserts claims for breach of the asserted intercreditor agreement represented by the Fraudulent Eurosemillas Intercreditor Agreement, breach of the implied covenant of good faith and fair dealing arising from same, fraud in the inducement relating to purported misrepresentations as to the state of development of iNDx's technology, and for "unfair competition" by reason of Defendants' denial of Plaintiff's legal positions.

As set forth above, Defendants deny each such allegation. All representations and promises were made by Uttarwar. The supporting evidence is fraudulent. Plaintiff has been induced to take these positions and falsely claim ownership of the Collateral by Uttarwar and Gupta. Defendants assert three counterclaims against Plaintiff: intentional interference with contractual relations with respect to the Intercreditor Agreement between PLC and NMS; intentional interference with contractual relations in relation to the PDA and License Agreement between iNDx and NMS; and for declaratory relief that Plaintiff has no rights in the Collateral and no rights to distribute the intellectual property constituting the Collateral. Defendants, as Third Party Plaintiffs, assert claims of equitable indemnity against Uttarwar, and intentional interference by Uttarwar and Gupta with Third Party Plaintiffs' rights under the Intercreditor Agreement, PDA and License Agreement.

3. <u>Legal Issues</u>

*A brief statement, without extended legal argument, of the disputed points of law, including reference to specific statutes and decisions.*

On August 28, 2017, the Court issued a ruling on Defendants' motion to dismiss the First Amended Complaint, which sets forth in detail the law on each of Plaintiffs' four claims for breach of contract, breach of the implied covenant, fraud and unfair competition. All claims were dismissed except for breach of contract as against PLC only; as to that claim, the Court ruled that a factual issue existed as to whether PLC intended to be bound by the purported intercreditor agreement even though NMS did not sign. That motion, however, assumed the truth of Plaintiff's allegations. In fact, there was no intercreditor agreement, even partially executed, and its submission as such by Plaintiff was fraudulent.



4. <u>Motions</u>

*All prior and pending motions, their current status, and any anticipated motions.*

On June 14, 2017, Defendants filed a motion to dismiss the original Complaint, which motion was rendered moot by Plaintiffs' filing of a First Amended Complaint. On July 27, 2017, Defendants filed a motion to dismiss the First Amended Complaint, which was disposed of through an order entered August 28, 2017, partially granting the Motion to Dismiss.

There are no motions currently pending in this action. Defendants may file a motion for summary judgment.

5. <u>Amendment of Pleadings</u>

*The extent to which parties, claims, or defenses are expected to be added or dismissed and a proposed deadline for amending the pleadings.*

At present, Defendants, Counterclaimants and Third Party Plaintiffs do not anticipate adding, dismissing or amending any part of their claims or defenses. Defendants, Counterclaimants and Third Party Plaintiffs suggest a deadline of 120 days for amending any pleadings.

6. <u>Evidence Preservation</u>

*A brief report certifying* that *the parties have reviewed the Guidelines Relating to the Discovery of Electronically Stored Information ("ESI Guidelines"), and confirming that the parties have met and conferred pursuant to Fed. R. Civ. P. 26(f) regarding reasonable and proportionate steps taken to preserve evidence relevant to the issues reasonably evident in this action. See ESI Guidelines 2.01 and 2.02, and Checklist for ESI Meet and Confer.*

Defendants, Counterclaimants and Third Party Plaintiffs' counsel has reviewed the ESI Guidelines. The parties have not met and conferred pursuant to F.R.C.P. 26(f) as counsel for Plaintiff and Counter-defendant has failed to communicate with opposing counsel so as to initiate or complete those tasks.

7. <u>Disclosures</u>

*Whether there has been* full *and timely compliance with the initial disclosure requirements of Fed. R. Civ. P. 26 and a description of the disclosures made.*

Defendants, Counterclaimants and Third Party Plaintiffs have not made initial disclosures pursuant to F.R.C.P. 26 because Plaintiff's counsel has failed to initiate the Rule 26 procedures or respond to defense counsel's efforts to conduct those procedures.



8. <u>Discovery</u>

*Discovery taken to date, if any, the scope of anticipated discovery, any proposed limitations or modifications of the discovery rules, a brief* report *on whether the parties have considered entering into a stipulated e-discovery order, a proposed discovery plan pursuant to Fed. R. Civ. P. 26(f), and any identified discovery disputes.*

No discovery has been conducted to date and Plaintiff's counsel's failure to communicate with defense counsel has precluded entering into a stipulated discovery order, a proposed discovery plan pursuant to F.R.C.P. 26(f), and any identification of discovery disputes.

Defendants and Third Party Plaintiffs intend to serve requests for admission, interrogatories, and document production requests, as well as schedule depositions, as necessary and appropriate.

9. <u>Class Actions</u>

*If a class action, a proposal for how and when the class will be certified.*

Not applicable.

10. <u>Related Cases</u>

*Any related cases or proceedings pending before another judge of this court, or before another court or administrative body.*

No related cases are known.

11. <u>Relief</u>

*All relief sought through complaint or counterclaim, including the amount of any damages sought and a description of the bases on which damages are calculated. In addition, any party from whom damages are sought must describe the bases on which it contends damages should be calculated if liability is established.*

<u>Complaint</u>:  Plaintiff seeks declarations that PLC, NMS and/or LDIP breached the purported intercreditor agreement, that Plaintiff holds an equitable lien on the Collateral, that Plaintiff is a tenant in common in the Collateral, that Defendants are liable to Plaintiff for unfair competition and that Plaintiff is entitled to all benefits purported to be wrongfully and unjustly retained by Defendants.  Plaintiff further seeks an order "unwinding" the foreclosure sale, an injunction enjoining any post-foreclosure proceedings pending resolution of the litigation, including preventing Defendants from transferring ownership or title of the Collateral and denying Plaintiff's purported *pari passu* rights in the Collateral.  Plaintiff further seeks an order requiring specific performance of the purported intercreditor agreement by Defendants to recognize Plaintiff's purported rights in the Collateral and to recognize the validity of the quitclaim assignment and an order enjoining the



current purported "invalidity challenges," or future challenges to the validity and enforceability of the purported intercreditor agreement before the U.S. Patent and Trademark Office or other third party or otherwise denying Plaintiff's purported joint ownership in the Collateral. Plaintiff further requests an order to quiet title to the Collateral under the purported intercreditor agreement and quit claim assignment, and an order directing Defendants to transfer all hardware and/or provide a copy of all software codes, descriptions, flowcharts and other work product used to design, plan, organize and develop the Collateral, and all supporting documentation, including user manuals and training materials. Plaintiff further seeks monetary damages consisting of attorneys' fees incurred by reason of defending its purported fraud and other wrongful conduct, disgorgement of profits, punitive damages, any applicable statutory damages, interest on all damages awarded, attorneys' fees and costs of suit, all in an unliquidated amount.

<u>Counterclaims</u>: Counterclaimants seek an award of compensatory damages for intentional interference with contractual relations related to the PDA and License Agreement and Intercreditor Agreement between PLS and NMS, and an injunction to prevent continued assertion of distribution rights to the Collateral and punitive damages. Counterclaimants further seek a declaratory judgment that Cross-Defendant has no rights in the Collateral and no distribution rights to intellectual property constituting the Collateral, and attorneys' fees and costs of suit.

<u>Third Party Complaint</u>: Third Party Plaintiffs seek compensatory damages on its claims for equitable indemnity, to the extent they are found liable to Plaintiff and compensatory and punitive damages on their intentional interference with contract claims, according to proof. There is no current calculation of damages.

12. <u>Settlement and ADR</u>

*Prospects for settlement, ADR efforts to date, and a specific ADR plan for the case, including compliance with ADR L.R. 3-5 and a description of key discovery or motions necessary to position the parties to negotiate a resolution.*

Prospects for settlement at this time are unknown, partly due to Plaintiff's counsel's failure to communicate with Defense counsel, and the Third Party Defendants have yet to be served and appear in this action. Depositions of the Third Party Defendants and other individuals need be required to position the parties to negotiate a resolution, but this remains unknown to date.



### 13. Consent to Magistrate Judge For All Purposes

*Whether all parties will consent to have a magistrate judge conduct all further proceedings including trial and entry of judgment.*

   X  YES    NO

### 14. Other References

*Whether the case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation.*

This Case is not suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multi-District Litigation.

### 15. Narrowing of Issues

*Issues that can be narrowed by agreement or by motion, suggestions to expedite the presentation of evidence at trial (e.g., through summaries or stipulated facts), and any request to bifurcate issues, claims, or defenses.*

By reason of Plaintiff's counsel's failure to communicate, it is unknown whether any issues can be narrowed by agreement, summaries or stipulated facts. Issues may be narrowed or wholly eliminated through a motion for summary judgment or partial adjudication. Defendants do not request a bifurcation of any issues, claims or defenses.

### 16. Expedited Trial Procedure

*Whether this is the type of case that can be handled under the Expedited Trial Procedure of General Order 64, Attachment A. If all parties agree, they shall instead of this Statement, file an executed Agreement for Expedited Trial and a Joint Expedited Case Management Statement, in accordance with General Order No. 64, Attachments B and D.*

This case is not of the type that can be handled under the Expedited Trial Procedure.

### 17. Scheduling

*Proposed dates for designation of experts, discovery cutoff, hearing of dispositive motions, pretrial conference and trial.*

Defendants, Counterclaimants, and Third Party Plaintiffs propose the following dates:

Fact Discovery Cutoff: February 26, 2018 (approximately 120 days from the date of the CMC)

Initial Expert Designations and Report Exchanges: March 28, 2018

Expert Rebuttal Reports and Designations: April 20, 2018

Completion of Expert Discovery: May 18, 2018

Deadline for Hearing of Dispositive Motions: June 29, 2018

1  Pre-Trial Conference: July 31, 2018

2  Trial: First available Court date on or after August 22, 2018

3  18. <u>Trial</u>

4  *Whether the case will be tried to a jury or to the court and the expected length of the trial.*

5  Plaintiff has requested a jury trial, but Defendants and Third Party Plaintiffs have not. It is
6  unknown whether the Third Party Defendants will request a jury trial. Defendants do not know how
7  long Plaintiff expects it will take to present its case in chief, but Defendants anticipate that
8  presentation of their defenses and third party claims should not exceed three days.

9  19. <u>Disclosure of Non-party Interested Entities or Persons</u>

10 *Whether each party has filed the "Certification of Interested Entities or Persons" required by Civil Local Rule 3-16.
In addition, each party must restate in the case management statement the contents of its certification by identifying
11 any persons, firms, partnerships, corporations (including parent corporations) or other entities known by the party to
have either: (i) a financial interest in the subject matter in controversy or in a party to the proceeding; or (ii) any
12 other kind of interest that could be substantially affected by the outcome of the proceeding.*

13 Defendants filed their Certification of Interested Entities or Persons on July 5, 2017 [Dkt.
14 No. 14]. The Court's docket has no entry for the filing of such a certification by Plaintiff. The
15 persons and entities identified by Defendants in their Certification are as follows:

16
    PLC Diagnostics, Inc.
    National Medical Services, Inc. dba NMS Labs
17  LDIP, LLC
    Reuven Duer
18  Eric Rieders
    Michael Rieders
19  Marion Rieders
    Maria Rieders
20  Pierre Cassigneul
    Neal McCarthy
21  Norm Gitis
    Abraham Sofaer
22  Hank Nordhoff
    Herb Dwight
23  Jupiter Partners
    Ruben Srugo
24  LioniX (Panthera Group BV)
    Meyer Elkaim
25  Lawrence Zulch
    Marc Abramowitz
26  Roberto Geberovich
27
28



Jack Stuppin
James Herron
Arie Duer
Yariv Oz
Gabriel Srugo
Ron Casentini
Bob Tufts
Nisim Aharoni
Nurit Fisher
Abraham Cohen
Sofaer Family Trust
Bob Ledoux
Doug Christenson
Mike Sofaer
WS Investment Company, LLC
Krueger, Todd
Reichert, William
Daniel Epstein
John Glancy
Leyla Sabet
Engstrom, Henrik

20. <u>Professional Conduct</u>

*Whether all attorneys of record for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.*

Counsel for Defendants have reviewed the Guidelines for Professional Conduct for the Northern District of California.

21. <u>Other</u>

*Such other matters as may facilitate the just, speedy and inexpensive disposition of this matter.*

By reason of Plaintiff's counsel's failure to communicate, defense counsel cannot opine as to what would facilitate a just, speedy and inexpensive disposition of this matter, other than a dismissal for failure to comply with the requirements of F.R.C.P. 26 and the Local Rules of Court.

Dated: October 19, 2017

By: _____*/s/ Steven J. Kahn*_____
    Steven J. Kahn
    Harry D. Hochman
    Attorneys for Defendants, Counterclaimants and
    Third Party Plaintiffs



## CASE MANAGEMENT ORDER

The above UNILATERAL CASE MANAGEMENT STATEMENT & PROPOSED ORDER is approved as the Case Management Order for this case and all parties shall comply with its provisions. [In addition, the Court makes the further orders stated below:]

IT IS SO ORDERED.

Dated: _____

UNITED STATES DISTRICT/MAGISTRATE JUDGE



# **PROOF OF SERVICE**

1  
2  STATE OF CALIFORNIA  )
                        )
3  COUNTY OF LOS ANGELES )

4    I, Mary de Leon, am employed in the city and county of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067.

  On <u>October 19, 2017</u>, I caused to be served the ***UNILATERAL CASE MANAGEMENT STATEMENT & [PROPOSED] ORDER*** in this action as follows:

☐  (BY MAIL) I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

☐  (BY EMAIL) I caused to be served the above-described document by email to the parties indicated on the attached service list at the indicated email address.

☑  (BY NOTICE OF ELECTRONIC FILING) I caused to be served the above-described document by means of electronic transmission of the Notice of Electronic Filing through the Court's transmission facilities, for parties and/or counsel who are registered ECF Users.

☐  (BY FAX) I caused to be transmitted the above-described document by facsimile machine to the fax number(s) as shown. The transmission was reported as complete and without error. (Service by Facsimile Transmission to those parties on the attached List with fax numbers indicated.)

☑  (BY OVERNIGHT DELIVERY) I caused to be served the above-described document by sending by Federal Express to the addressee(s) as indicated on the attached list.

  I hereby certify that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

  Executed on <u>October 19, 2017</u>, at Los Angeles, California.

               */s/ Mary de Leon*  
               Mary de Leon

DOCS_LA:309704.1 70872/002

# **SERVICE LIST**

**By FedEx Delivery:**

Magistrate Judge Maria-Elena James
San Francisco Courthouse
Courtroom B – 15th Floor
450 Golden Gate Avenue
San Francisco, CA 94102

**3:17-cv-03159-MEJ Notice will be sent via NEF/electronically mailed to:**

- **Ruchit Kumar Agrawal**
  ruchit@kumarlawsv.com
- **Reuven Duer**
  ruvduer@gmail.com
- **Harry David Hochman**
  hhochman@pszjlaw.com
- **PLC Diagnostics Inc.**
  ruvduer@gmail.com
- **Eric Rieders**
  Eric.Rieders@nmslabs.com