Steven J. Kahn (CA Bar No. 76933)
Harry D. Hochman (CA Bar No. 132515)
PACHULSKI STANG ZIEHL & JONES LLP
150 California Street, 15th Floor
San Francisco, CA 94111-4500
Telephone: 415.263.7000
Facsimile: 415.263.7010
Email: skahn@pszjlaw.com
        hhochman@pszjlaw.com

Attorney for PLC DIAGNOSTICS, INC.,
NATIONAL MEDICAL SERVICES, INC.,
LDIP, LLC, REUVEN DUER and ERIC
RIEDERS

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN FRANCISCO DIVISION

| | |
|---|---|
| EUROSEMILLAS, S.A., a Spanish corporation,<br><br>                    Plaintiff,<br><br>          v.<br><br>PLC DIAGNOSTICS, INC., a Delaware corporation; NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, a Pennsylvania corporation; LDIP, LLC, a Delaware limited liability company; REUVEN DUER; ERIC RIEDERS; and DOES 1 through 10, inclusive,<br><br>                    Defendants. | Case No.: 17-cv-3159-MEJ<br><br>**COUNTERCLAIMANTS' OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS**<br><br>Date:    December 7, 2017<br>Time:    10:00 a.m.<br>Place:   450 Golden Gate Ave.<br>         Courtroom B<br>         San Francisco, CA<br>Judge:   Hon. Maria-Elena James |
| PLC DIAGNOSTICS, INC., a Delaware corporation; and NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, a Pennsylvania corporation;<br><br>                    Counterclaimants,<br><br>          v.<br><br>EUROSEMILLAS, S.A., a Spanish corporation,<br><br>                    Counter-Defendant. | |

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CA

PLC DIAGNOSTICS, INC., a Delaware corporation; NATIONAL MEDICAL SERVICES, INC. dba NMS LABS, a Pennsylvania corporation; LDIP, LLC, a Delaware limited liability company; REUVEN DUER; and ERIC RIEDERS;

Third Party Plaintiffs,

v.

MOHAN UTTARWAR, an individual, and PIYUSH GUPTA, an individual,

Third Party Defendants.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

# **TABLE OF CONTENTS**

**Page**

I.      INTRODUCTION ............................................................................................................ 1

II.     FACTUAL ALLEGATIONS .......................................................................................... 4

        A.    iNDx Agreements with PLC and NMS ................................................................ 4

        B.    Uttarwar's False Promises and Eurosemillas' False Claims ................................ 5

III.    ARGUMENT .................................................................................................................. 8

        A.    The Contract Interference Counterclaims Are Not Barred by the Litigation Privilege 9

        B.    The Contract Interference Counterclaims Are Not Premature ................................. 12

        C.    The Contract Interference Counterclaims Are Sufficiently Pled .............................. 13

        D.    Declaratory Relief is Necessary and Appropriate ..................................................... 16

IV.     CONCLUSION ............................................................................................................. 17

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

i

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal,*
   129 S. Ct. 1937, 556 U.S. 662, 173 L. Ed. 2d 868 (2009) ........................................ 13

*Barrous v. BP P.L.C.,* No. 10-2944,
   2010 U.S. Dist. LEXIS 108933, 2010 WL 4024774, at *7
   (N.D. Cal. Oct. 13, 2010) ........................................................................................ 15

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) ........................................ 13

*Epistar Corp. v. Philips Lumileds Lighting Co., LLC,* No. C 07-5194 CW,
   2008 WL 3930030, at *1-2 (N.D. Cal. 2008) ........................................................... 11

*Erickson v. Pardus,*
   551 U.S. 89, 127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007) .................................. 13, 14

*Fourth Age Ltd. v. Warner Bros. Dig. Distribution,*
   No. CV 12-9912 ABC (SJHx), 2013 U.S. Dist. LEXIS 190339, at *9
   (C.D. Cal. July 11, 2013) ........................................................................................ 16

*In re Carrier IQ, Inc., Consumer Privacy Litig.,*
   78 F. Supp. 3d 1051, (N.D. Cal. 2015) .................................................................... 15

In *Ubiquiti Networks, Inc. v. Kozumi USA Corp.,* No. C 12-2582 CW,
   2013 WL 368365 (N.D. Cal. Jan. 29, 2013) ............................................................ 11

*LiMandri v. Judkins,*
   52 Cal. App. 4th 326, 60 Cal. Rptr. 2d 539, 551 (1997) ........................................... 11

*Pac. Gas & Elec. Co. v. Bear Stearns & Co.,*
   50 Cal. 3d 1118, 1126, 270 Cal. Rptr. 1, 3-4 (1990) ..................................... 9, 12, 13

*Sharper Image Corp. v. Target Corp.,*
   425 F. Supp. 2d 1056 (N.D. Cal. 2006) ................................................................... 11

*Silberg v. Anderson,*
   50 Cal.3d 205 (1990) .............................................................................................. 10

**Statutes**

*Federal Practice & Procedure* § 1406, at 36 (2d ed. 1990) ........................................... 16

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendants and Counterclaimants PLC DIAGNOSTICS, INC. ("PLC"), NATIONAL MEDICAL SERVICES, INC. dba NMS LABS ("NMS"), and LDIP, LLC ("LDIP") (collectively "Counterclaimants") hereby oppose the *Motion to Dismiss Defendants' Counterclaims* (the "Motion") filed by plaintiff and counterdefendant EUROSEMILLAS, S.A. ("Plaintiff"), and respectfully represent as follows:

## I.

## INTRODUCTION

At best, Plaintiff was apparently defrauded by third party defendant Mohan Uttarwar ("Uttarwar") into lending money to iNDx Lifecare, Inc. ("iNDx") based on two promises that Uttarwar (iNDx's CEO) had no ability to make. One was that Plaintiff's $250,000 loan would be secured by a senior lien on iNDx's intellectual property (the "IP"), equal in priority to liens already held by PLC and NMS securing $4.6 million of obligations to those parties. The other was that Plaintiff would receive exclusive distribution rights for the IP in Europe and Latin America, rights that had already been granted to NMS under its Product Development Agreement ("PDA") and License Agreement with iNDx (the "NMS License").

Despite imposing these alleged conditions, Plaintiff did not obtain any agreement with PLC or NMS on lien priority or distribution rights, or bother even to enter into a loan agreement or security agreement. In fact, Plaintiff had not even communicated with PLC or NMS on those (or any other) topics. Presumably, it relied on assurances from Uttarwar rather than hiring a lawyer. While that lending policy would be ill-advised under any circumstances, it was particularly unfortunate here, because Uttarwar had never discussed the proposed loan with PLC or NMS before it was made. When Plaintiff transferred funds to iNDx on November 5, 2014, PLC and NMS knew nothing of the purported loan. Only a week earlier, on October 28, 2014, PLC and NMS had entered into an Intercreditor Agreement with each other and iNDx to treat their liens on a *pari passu* basis, yet were not asked to include Plaintiff in that

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1

agreement.  Likewise, NMS had not been asked and had not agreed to relinquish to Plaintiff its European and Latin American distribution rights.

Since long before this litigation commenced, Plaintiff's approach to these problems has been the same as its approach to legal niceties such as written contracts: it ignores them.  Instead, Plaintiff goes about its business as if it is the exclusive distributor and/or co-owner of the IP, meeting with third parties and attempting to exploit non-existent commercialization rights in the IP.  This conduct continued even after PLC and NMS foreclosed on the IP collateral on November 9, 2016.  Plaintiff refused to acknowledge that its lien and iNDX's ownership interest had been extinguished; rather, it unilaterally pronounced that the effect of the sale was to give it *greater* rights.  Under a law known only to Plaintiff, it now claims a "joint tenancy" ownership interest in the IP, together with PLC and NMS.

Churning through one lawyer after the next (this is the second in this action and fifth overall), Plaintiff has disregarded the law, invented facts and submitted fabricated evidence.  Plaintiff finally commenced this action, alleging that it was induced by Defendants to make its purported loan, knowing full well that Plaintiff had no communications with Defendants on the subject.  Further, to corroborate the false narrative that there had been negotiations, Plaintiff submitted to this Court a document styled as an intercreditor agreement dated October 22, 2014, purportedly signed by all parties other than NMS.  Plaintiff argued that NMS' signature was unnecessary, going so far as to suggest that NMS might have signed the document and was simply withholding the signature page.

But as Plaintiff knew, it had no intercreditor agreement with PLC and NMS in October 2014 (or ever).  Uttarwar fabricated a fake intercreditor agreement at some point in time in or after August 2015, after a proposed amendment to the actual Intercreditor Agreement had been rejected.  Uttarwar presumably backdated the fake agreement to October 22 because of its proximity to the October 28 date of the only actual Intercreditor Agreement between PLC, NMS and iNDx, to create the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

2

impression that Plaintiff had been involved in negotiations during that period, and that an agreement or at least near-final agreement had been reached when Plaintiff made its loan.  Loan documentation was also back-dated: at some point in or after August 2015, Uttarwar created a security agreement that he backdated to October 28, 2014 and a promissory note that he backdated to January 28, 2015.

These facts, and those alleged in greater detail in the pleading itself, are the basis of (1) a counterclaim for interference with NMS' and PLC's rights under their Intercreditor Agreement with iNDx, (2) a counterclaim for interference with NMS' distribution rights under the NMS License, and (3) a counterclaim for declaratory relief that Plaintiff has no rights in the IP.  To summarize these counterclaims and their supporting facts accurately is to reveal the Motion as meritless.  First, the litigation privilege is inapplicable, because the contractual interference claims are not based upon statements made in litigation or in preparation for litigation, but on a course of conduct that commenced long before the litigation.  Second, the contractual interference claims are not premature, because they are not based upon the bringing of litigation without probable cause (particularly as they relate to Plaintiff's conduct, as opposed to that of third party defendants Uttarwar and Piyush Gupta).  Third, the basis of the counterclaims for Plaintiff's interference with contract rights under the Intercreditor Agreement, PDA and NMS License is adequately pled: the contracts and the interference is alleged, and damages will require discovery as to the extent of Plaintiff's efforts to commercialize intellectual property in which it has no rights of any kind.

Fourth, and finally, the claim for declaratory relief is not the mirror image of Plaintiff's claims, and so is not redundant.  Judgment against Plaintiff on its claims for breach of a non-existent contract, fraud and unfair competition is not the same as a judicial declaration that Plaintiff has no interest in the IP.  Defeating Plaintiff's claims is not likely to put a stop to its repeated assertions, made through a succession of lawyers, that it has the right to exploit commercialization rights based on a "joint

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

3

tenancy" ownership interest in the IP.  Only a declaratory judgment will avoid the need for whack-a-mole litigation to squash whatever new theory Plaintiff's next attorney may come up with.  Accordingly, the Motion should be denied in its entirety.

## II.

## FACTUAL ALLEGATIONS

The following summarizes the facts alleged in support of the counterclaims.

**A.    iNDx Agreements with PLC and NMS**

iNDx was formed pursuant to a Joint Venture Agreement between PLC and iNDx Technology, Inc., dated December 27, 2013.  Counterclaim ("CC") ¶ 12.  iNDx issued a $3,100,000 million promissory note to PLC (the "PLC Note"), secured by a lien on all of iNDx's right, title and interest in the IP, consisting of patents and other intellectual property identified in the concurrently executed security agreement (also referred to as the "Collateral").  PLC recorded a UCC-1 financing statement on September 24, 2014.  CC ¶ 15.

NMS made a secured loan of $1,000,000 to iNDx pursuant to a promissory note dated November 15, 2014, and an additional secured loan of $500,000 pursuant to a promissory note dated May 27, 2015 (the "NMS Notes"), secured by a lien on the Collateral pursuant to an original and amended security agreement.  NMS recorded a UCC-1 financing statement on October 30, 2014.  CC ¶¶ 16-18.

iNDx, PLC and NMS executed an Intercreditor Agreement, dated October 28, 2014.  When NMS made its additional $500,000 loan to iNDx, the parties executed a First Amendment to the Intercreditor Agreement, dated June 2, 2015 (the original and amendment being referred to together as the "Intercreditor Agreement").  The Intercreditor Agreement provided in summary, and in relevant part, that the PLC Note and NMS Notes, and their respective liens on the Collateral, would be treated by iNDx and by each other on a *pari passu*, pro rata basis.  CC ¶ 23.

NMS was also party to a Product Development Agreement and License Agreement with iNDx (defined above as the "PDA" and the "NMS License"), dated

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

4

August 1, 2014.  NMS received, among other rights, exclusive commercialization rights world-wide (outside of India) for all products that iNDx was developing under the PDA and the NMS License.  CC ¶ 19.

Uttarwar was the CEO of iNDx at the time each of these agreements was executed and was knowledgeable concerning their provisions, as well as with the intellectual property and products covered by the License Agreement.  Plaintiff knew of the PDA and the NMS License and the Intercreditor Agreement.   CC ¶¶ 11, 15-18, 21-23.

**B.**    **Uttarwar's False Promises and Eurosemillas' False Claims**

Plaintiff Eurosemillas (sometimes referred to as "Spanco") is a Spanish company of which a friend of Uttarwar, Javier Cano, was and is a principal.  Plaintiff alleges in the Complaint that in approximately March 2014, it invested $200,000 in equity in iNDx, in reliance on alleged misrepresentations by defendant Reuven Duer of PLC concerning the state of the technology provided by PLC to iNDx.  But as Plaintiff well knows, if it received any misrepresentations, it received them from Uttarwar, not Duer.  CC ¶¶ 24-26.

Plaintiff alleges in the Complaint that it loaned $250,000 to iNDx (the "Spanco Loan") pursuant to a Secured Convertible Promissory Note dated January 28, 2015, with a maturity date of March 31, 2016 (the "Spanco Note"), and that the Spanco Note was secured by a Security Agreement dated three months earlier, on October 24, 2014 (the "Spanco Security Agreement").  However, it did not record a UCC-1 financing statement until November 19, 2015.  CC ¶¶ 27-28.

Plaintiff alleges that PLC and NMS agreed that the Spanco Note would be secured by a lien on the Collateral and treated on a *pari passu*, pro rata basis with the PLC Note and the NMS Notes.  To evidence that agreement, Plaintiff filed with the Court, in support of its opposition to Defendants' motion to dismiss the first amended Complaint, a purported intercreditor agreement dated October 22, 2014, signed by Plaintiff, iNDx, and PLC but not by NMS (the "Fraudulent Eurosemillas Intercreditor

DOCS_LA:310374.4 70872/002

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Agreement"). CC¶ 29. Plaintiff contends that it was also promised that it would have exclusive commercialization rights for certain iNDx intellectual property in Europe and Latin America. CC ¶ 30. These promises and agreements violated PLC's and NMS' rights under the Intercreditor Agreement, the PDA and NMS License. CC ¶¶ 35-36.

But as Plaintiff knows, there was no intercreditor agreement, even a partial one, with Plaintiff on October 22, 2014, nor was there a Spanco Security Agreement on October 24, 2014, nor was there a Spanco Note on January 28, 2015. CC ¶ 31. In fact, when Plaintiff allegedly transferred $250,000 to iNDx on November 5, 2014[1], PLC and NMS had not been advised of the Spanco Loan. Even though they had entered into the Intercreditor Agreement only a week earlier, they had not been asked to include Plaintiff in the Intercreditor Agreement, or to enter into any new intercreditor agreement with Plaintiff, nor had NMS been asked to cede any distribution rights to Plaintiff. CC ¶¶ 32-34.

In fact, PLC and NMS were first asked by Uttarwar to amend their Intercreditor Agreement to include Plaintiff in or around *August, 2015*. Uttarwar was advised on August 4, 2015 that a proffered form of intercreditor agreement was unacceptable to the existing parties to the Intercreditor Agreement, and that the document required revision and loan documentation must be provided. CC ¶¶ 37-38. But there were no loan documents. A revised draft was circulated in August 2015 but was never executed, and that draft was later used as a starting point in March 2016 for a proposed second amendment to the Intercreditor Agreement (further evidencing that no prior agreement existed). CC ¶¶ 41-42. Those March 2016 discussions were prompted by NMS' provision of bridge loans to the floundering company: NMS wanted its new loans to share first priority treatment and to achieve that objective was willing to amend the Intercreditor Agreement to also permit the Spanco Loan to be

---

[1] The bona fides of the loan are uncertain, because on the same day, without iNDx board approval, Uttarwar wired back approximately $100,000 for use by Javier Cano, ostensibly in connection with a Cano-controlled entity, iNDx Europe, that was essentially a shell with no cash flow or activities. CC ¶ 32.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

treated *pari passu* with other secured debt.  But although Plaintiff was sent a proposed amended intercreditor agreement on March 11, 2016, Plaintiff never signed it or even requested any changes, and the subject did not arise again before iNDx failed entirely. CC ¶¶ 43-46.

The Fraudulent Eurosemillas Intercreditor Agreement that was submitted in this lawsuit was created by taking a signature page that Duer had executed for PLC before it was rejected by its co-party to the Intercreditor Agreement, attaching it to a document that had been ***rejected*** in August 2015, and then backdating it to October 22, 2014.  CC ¶ 39.  That date was presumably chosen because it is proximate to the October 28, 2014 date of the original, actual Intercreditor Agreement, so as to imply that there had been negotiations with Plaintiff before Plaintiff made its alleged loan on November 5, 2014.  CC ¶ 39.  The purported Security Agreement with Plaintiff, which did not yet exist in August 2015, was backdated to October 24, 2014, presumably for the same reason, while the Spanco Note was backdated to January 28, 2015.  CC ¶¶ 27-28.

On July 14, 2016, PLC and NMS noticed a foreclosure sale of the Collateral for August 12, 2016.  iNDx commenced a bankruptcy case in the United States Bankruptcy Court for the Northern District of California on August 11, 2016.  iNDx stipulated to relief from the automatic stay on October 19, 2016, and the foreclosure sale was conducted on November 4, 2015.  PLC and NMS, acting through an affiliate, LDIP, acquired the Collateral for a credit bid of $1,000,000.  The bankruptcy case was dismissed.  CC ¶ 47.

On or about December 24, 2016, about two months after the foreclosure sale, third party defendant Gupta (a director of iNDx) executed a Quitclaim Assignment to Plaintiff of any interest of iNDx in and to the IP (that is to say, none).  It recites as a purported fact that Plaintiff received *pari passu* rights in the IP pursuant to the Fraudulent Eurosemillas Intercreditor Agreement.  CC ¶ 48.  Plaintiff now contends that it has somehow acquired a joint tenancy ownership interest in the IP and that it is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

7

entitled to exclusive general commercialization rights in the European Union and Latin America for all products using the IP that formerly belonged to iNDx and on which it had a junior lien.  CC ¶ 49.  Before and after the foreclosure, however, Plaintiff had and has no rights in the IP that constituted the Collateral, and its claim and exercise of exclusive commercialization rights in Europe and Latin America has been and continues to be in violation of NMS's rights under the PDA and License Agreement and LDIP's ownership rights.  CC ¶ 50.

## III.

## ARGUMENT

The foregoing allegations are the basis of the following counterclaims: (1) by PLC and NMS against Plaintiff for intentional interference with their rights under their Intercreditor Agreement with iNDx; (2) by NMS against Plaintiff for intentional interference with its rights under the PDA and NMS License with iNDx; and (3) for declaratory relief that Plaintiff has no interest in the IP.

Plaintiff argues for dismissal on four grounds:

- The intentional interference claims are barred by the litigation privilege, which bars claims that are based on communications made in the course of legal proceedings.

- The intentional interference claims are premature because they are based on Plaintiff having no probable cause to support its lawsuit, and so cannot be commenced until that lawsuit is concluded.

- The intentional interference claims do not adequately plead what actions Plaintiff has taken that prevent or impede the performance of the contracts at issue, or how such actions have caused harm.

- The declaratory relief claim is duplicative because it is just the "mirror image" of Plaintiff's claims, *i.e.*, if those claims are successfully defended, there is no need for declaratory relief that Plaintiff has no rights in the IP.

8

These arguments are meritless, for the reasons explained *seriatim* below.

## A.   The Contract Interference Counterclaims Are Not Barred by the Litigation Privilege

"The elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126, 270 Cal. Rptr. 1, 3-4 (1990) (citing cases).

NMS and PLC are parties to an Intercreditor Agreement with iNDx, pursuant to which iNDx was obligated, *inter alia*, to treat their claims and liens on a *pari passu*, pro rata, senior secured basis, and to obtain their consent before agreeing to take on additional secured debt.  NMS was party to the PDA and NMS License with iNDx, pursuant to which iNDx granted NMS exclusive worldwide distribution and commercialization rights in the IP, excepting only India.  Plaintiff was aware of these contractual obligations and, together with the third party defendants, induced and caused iNDx to breach them in and after November 2014, by demanding and receiving lien rights that iNDx was not authorized to grant, demanding and purportedly receiving distribution rights that iNDx had already granted to NMS, and attempting to exploit rights in IP in which it has no interest.  Plaintiff's asserted status as a co-senior lienholder was the basis for its assertion of ownership rights in the IP following the foreclosure on November 9, 2016.  Before and after the foreclosure, Plaintiff has conducted meetings with potential buyers and partners and what it has described as "key opinion leaders" and made unknown promises and representations about the IP that may adversely affect its commercial exploitation and development, and impede fundraising by clouding title to the IP.  All of this conduct interferes with the certainty regarding lien priority to which PLC and NMS were entitled under the

9

Intercreditor Agreement and the exclusive worldwide distribution rights to which NMS was entitled under the PDA and NMS License.

These claims are not barred by the litigation privilege.

> The litigation privilege applies to any communications (1) made in a judicial proceeding; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; (4) that have some connection or logical relation to the action.

*Silberg v. Anderson*, 50 Cal.3d 205, 212 (1990).  Although Plaintiff asserts that "most of the communications on which Defendants rely were made (1) in preparation for and in the course of the litigation, and (2) to parties to the litigation," (Mot. at 7) that is a blatant mischaracterization of the counterclaims:  *none* of the above-summarized facts comprise "communications made in a judicial proceeding," or concerning a judicial proceeding," or even simply in contemplation of a judicial proceeding.  Nor do the counterclaims "*turn on the filing of this lawsuit*" (Mot. at 6) or on "communications Eurosemillas has had with third parties *regarding its rights in and to the Collateral* under this agreement."  *Id*.  The interference on which the intentional interference claims are based consists of a course of conduct that long predates this litigation, and includes inducing breach of contracts and marketing rights that Plaintiff does not hold.

Plaintiff miscomprehends the litigation privilege: a claim for tortious conduct is not barred *ab initio* simply because the underlying conduct at some future time becomes the subject of litigation.  Under Plaintiff's mistaken view, the fact that its assertions of ownership of the IP are now being litigated is sufficient to bar the counterclaims.  But if that were the law, *all* claims for interference with contractual rights would be barred *at inception* by the litigation privilege, rather than being decided on their merits, because *all* such litigation involves communications that their makers believed (presumably) that they were entitled to make prior to the litigation.

That is not the law.  "For the litigation privilege to apply to prelitigation communicative conduct, the conduct must have 'some relation to a proceeding that is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

actually contemplated in good faith and under serious consideration. . . .'" *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 348, 60 Cal. Rptr. 2d 539, 551 (1997) (internal citation omitted).  It is not enough that the propriety of the communication is later litigated. *Id*. ("That Judkins's actions resulted in an interpleader action does not mean they were undertaken in anticipation of such litigation.").  As Plaintiff's own authority explains, "it is not the mere *threat* of litigation that brings the privilege into play, but rather the actual good faith contemplation of an imminent, impending resort to the judicial system for the purpose of resolving a dispute." *Sharper Image Corp. v. Target Corp*., 425 F. Supp. 2d 1056, 1078 (N.D. Cal. 2006) (emphasis in original) (citing cases).

The distinction between the facts of this case and those of the cases relied upon by Plaintiff is obvious on its face: Plaintiff's authorities involve communications to third parties about *issues and events in the litigation*:

- In *Sharper Image Corp. v. Target Corp*., *supra*, Sharper Image sent a letter to retailers advising them of a patent infringement lawsuit and asking them not to carry an allegedly patent-infringing product.  The statement was privileged.

- In *Epistar Corp. v. Philips Lumileds Lighting Co., LLC*, No. C 07-5194 CW, 2008 WL 3930030, at *1-2 (N.D. Cal. 2008).  Lumileds had sent communications to its customers stating that the ITC had ruled that Epistar's products infringed Lumiled's patent.  The statements were privileged.

- In *Ubiquiti Networks, Inc. v. Kozumi USA Corp*., No. C 12-2582 CW, 2013 WL 368365 (N.D. Cal. Jan. 29, 2013), a plaintiff sent an email to its customers informing them that it had obtained a preliminary injunction.  The statement was privileged.

Far more analogous is *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 345, 60 Cal. Rptr. 2d 539, 549 (1997), in which a tortious interference with contract claim was

11

based on the creation of a security interest and the assertion of that security interest as superior to the plaintiff's lien.  The claim was not barred by the litigation privilege.

> [Cal. Civ. Code] Section 47, subdivision (b)(2), does not bar LiMandri's cause of action for intentional interference with contractual relations because it is based upon an alleged tortious course of conduct, including Judkins's preparing and having the Deddehs execute documents creating Security's security interest in the Deddehs' gross share of the Signal Landmark settlement proceeds and his refusal to concede the superiority of LiMandri's contractual lien.  While the isolated act of filing Security's notice of lien was communicative, it was only one act in the overall course of conduct alleged in LiMandri's third cause of action.  In any event, as we discussed above, the filing of Security's notice of lien did not create the competing lien which interfered with LiMandri's contractual relations; it merely gave notice that Security was asserting the lien.

*Id.*, 52 Cal. App. 4th at 345.  Here, the counterclaims are based on Plaintiff's inducing iNDx to breach contracts and its wrongful assertion of lien priority, ownership of the IP and distribution and commercialization rights.  They are not based on communications asserting that it owns the IP, and Plaintiff's assertions of rights in the IP were not in any event made in or in preparation for the recently commenced litigation.  In short, Plaintiff mischaracterizes the counterclaims and misapplies the litigation privilege.

**B.**     **The Contract Interference Counterclaims Are Not Premature**

In *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, *supra*, the California Supreme Court held that a claim for intentional interference with contractual relations based on inducing another to undertake litigation is subject to the same requirements as a claim for malicious prosecution: the plaintiff must allege that the litigation was brought without probable cause and that the litigation concluded in plaintiff's favor.  Plaintiff therefore urges that the counterclaims for interference with contract relations are premature.

12

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    The short response is that, as discussed at length above, the conduct by

2  Plaintiff that is alleged to constitute tortious interference with NMS' and PLC's

3  contractual rights is not, or at least is not limited to, the bringing of a lawsuit without

4  probable cause.  In any event, Plaintiff is the litigant, not the party that induced it to

5  undertake the litigation.  That distinction belongs to third party defendants Uttarwar

6  and Gupta.  Accordingly, the counterclaims are not premature.

7  **C.    The Contract Interference Counterclaims Are Sufficiently Pled**

8    Plaintiff argues that the counterclaims for interference with contract relations do

9  not adequately plead what actions it has taken that prevent or impede the performance

10  of the contracts at issue, or how such actions have caused harm.

11    As stated above, the elements of a claim for tortious interference with contract

12  are: (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge

13  of this contract; (3) defendant's intentional acts designed to induce a breach or

14  disruption of the contractual relationship; (4) actual breach or disruption of the

15  contractual relationship; and (5) resulting damage.  *Pac. Gas & Elec. Co. v. Bear*

16  *Stearns & Co.*, 50 Cal. 3d at 1126.

17    While a complaint's "[f]actual allegations must be enough to raise a right to

18  relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555,

19  127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), detailed factual allegations are not required

20  to survive a motion under Rule 12(b)(6).  *Id.*; *Erickson v. Pardus*, 551 U.S. 89, 93,

21  127 S. Ct. 2197, 167 L. Ed. 2d 1081 (2007).  Rather, the factual allegations must state

22  a "plausible" theory of recovery.  *Twombly*, 550 U.S. at 570.  "The issue is not

23  whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer

24  evidence to support the claims."  *Id.*

25    Plausibility in the context of a Rule 12(b)(6) motion is "a context-specific task

26  that requires the reviewing court to draw on its judicial experience and common

27  sense."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950, 556 U.S. 662, 173 L. Ed. 2d 868

28  (2009).  Plausibility "does not impose a probability requirement at the pleading stage;

13

it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of [the basis of the stated claim]."   *Twombly*, 550 U.S. at 556.

Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."   In *Erickson v. Pardus*, 551 U.S. 89 (2007) the Supreme Court reaffirmed that "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"   *Id.* at 94 (quoting *Twombly*; internal citations omitted).

In this case, the counterclaims for interference with contractual relations easily meet these requirements.  First, the contracts are specifically identified: the Intercreditor Agreement, PDA and NMS License.  Second, Plaintiff's knowledge of those contracts is alleged.  Third, numerous intentional acts by Plaintiff designed to induce a breach or disrupt the relationship are alleged, including inducing iNDx to enter into a secured loan, which breached iNDx's duties under the Intercreditor Agreement, and asserting senior lien rights that belonged to PLC and NMS and distribution and commercialization rights that belonged to NMS pursuant to their contracts with iNDx.  Fourth, the breach or disruption of those contracts and relationships is alleged: iNDx breached its agreements with PLC and NMS by accepting a secured loan from Plaintiff and granting a security interest, purportedly with a priority equal to that of the PLC and NMS liens, when iNDx had agreed only a week earlier in the Intercreditor Agreement to treat the PLC and NMS liens on a *pari passu*, senior secured basis and not to incur other secured debt without their consent. In addition, iNDx breached the PDA and NMS License by, *inter alia*, purporting to grant European and Latin American distribution rights to Plaintiff.

Fifth, NMS and PLC plead resulting damage.  Certain damages from the breach or disruption of the foregoing contracts are patent: for instance, PLC and NMS have incurred costs attempting to protect the contract rights that were breached.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

14

Intrinsically, as well, the cloud on title to the IP created by Plaintiff's wrongful assertion of ownership rights impairs the ability to raise funds for its commercial exploitation.  Other harm is alleged but its extent is yet unknown.  Plaintiff asks: "Do Defendants contend that Eurosemillas developed a competing product based on the Collateral that iNDx licensed to NMS?  Has Eurosemillas licensed to third parties or exploited the Collateral without authorization?  If so, to whom?  What exactly were the damages that Eurosemillas caused NMS?"  Mot. at 10.

Rule 8 does not require such detail, and Plaintiff cites no authority for dismissing a complaint on such facts, particularly where the relevant information is within the possession and control of Plaintiff.  PLC and NMS have alleged that (a) Plaintiff asserts that it has exclusive distribution and commercialization rights in Europe and Latin America, and (b) Plaintiff has held meetings with potential customers and key opinion leaders ("KOLs").  The potential for harm as a result of such meetings is more than plausible; it is enormous.  Dismissal would be inappropriate even on far slimmer allegations.  *See, e.g., In re Carrier IQ, Inc., Consumer Privacy Litig*., 78 F. Supp. 3d 1051, 1124 (N.D. Cal. 2015) ("[T]o the extent the Carrier IQ Software operated continually in the background, it is plausible that its operating taxed the mobile devices resources and battery such that it had a noticeable impact on the performance (and thus the value) of the mobile phones. For purposes of the pleading stage, these allegations are sufficient to allege actionable damages. Defendants remain free to challenge the factual and legal basis for these alleged damages after discovery at the summary judgment stage.").  *See also Barrous v. BP P.L.C.*, No. 10-2944, 2010 U.S. Dist. LEXIS 108933, 2010 WL 4024774, at *7 (N.D. Cal. Oct. 13, 2010) (finding the plaintiffs' general damage allegations sufficient at the motion to dismiss stage).  Accordingly, the counterclaims are well-pled.

**D.    Declaratory Relief is Necessary and Appropriate**

Plaintiff argues correctly that declaratory relief is discretionary where it is simply the mirror image of the complaint, *i.e.*, where if an action is successfully

15

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

defended, there is no need for the declaration of rights.  Dismissal is only appropriate if it is certain that the declaratory relief is entirely redundant.  Rather than dismiss potentially non-redundant declaratory judgment counterclaims, "[t]he safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action."  *Fourth Age Ltd. v. Warner Bros. Dig. Distribution*, No. CV 12-9912 ABC (SJHx), 2013 U.S. Dist. LEXIS 190339, at *9 (C.D. Cal. July 11, 2013) (quoting 6 Charles A. Wright & Arthur R. Miller, *Federal Practice & Procedure* § 1406, at 36 (2d ed. 1990)).

The declaratory relief requested here – that Plaintiff has no rights in the IP – is clearly *not* redundant.  If Plaintiff does not prevail on its claim for breach of a fake intercreditor agreement, fraudulent inducement or unfair competition, it will no doubt continue to claim through a sixth lawyer that it has rights in the Collateral on some other basis.  A judgment declaring that Plaintiff has no such rights is necessary in order to put a stop to its lawless behavior.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

16

# IV.

## CONCLUSION

WHEREFORE, for the foregoing reasons, Defendants and Counterclaimants respectfully request that the Motion be denied in its entirety, that leave to amend be granted to any extent that the Motion is granted, and for such other and further relief as the Court deems appropriate.

Dated:  November 15, 2017   PACHULSKI STANG ZIEHL & JONES LLP

         By:*/s/ Harry D. Hochman*
          Harry D. Hochman

         Attorneys for Defendants and Counterclaimants PLC Diagnostics, Inc., National Medical Services, Inc., LDIP, LLC, Eric Rieders and Reuven Duer

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

17

1

**PROOF OF SERVICE**

2   STATE OF CALIFORNIA        )
                             )
3   COUNTY OF LOS ANGELES    )

4       I, Myra Kulick, am employed in the city and county of Los Angeles, State of
5   California.  I am over the age of 18 and not a party to the within action; my business
    address is 10100 Santa Monica Blvd., 13th Floor, Los Angeles, California 90067.

6       On November 15, 2017, I caused to be served the ***COUNTERCLAIMANTS'***
7   ***OPPOSITION TO MOTION TO DISMISS COUNTERCLAIMS*** in this action as
    follows:

8

9                               *See Attached Service List*

10  ☐    (BY MAIL) I am readily familiar with the firm's practice of collection and
11         processing correspondence for mailing.  Under that practice it would be
           deposited with the U.S. Postal Service on that same day with postage
12         thereon fully prepaid at Los Angeles, California, in the ordinary course of
           business.  I am aware that on motion of the party served, service is presumed
13         invalid if postal cancellation date or postage meter date is more than one day
           after date of deposit for mailing in affidavit.

14  ☐    (BY EMAIL) I caused to be served the above-described document by email
15         to the parties indicated on the attached service list at the indicated email
           address.

16  ☑    (BY NOTICE OF ELECTRONIC FILING) I caused to be served the above-
17         described document by means of electronic transmission of the Notice of
           Electronic Filing through the Court's transmission facilities, for parties
18         and/or counsel who are registered ECF Users.

19  ☐    (BY FAX) I caused to be transmitted the above-described document by
           facsimile machine to the fax number(s) as shown.  The transmission was
20         reported as complete and without error.  (Service by Facsimile Transmission
           to those parties on the attached List with fax numbers indicated.)

21  ☑    (BY OVERNIGHT DELIVERY) I caused to be served the above-described
22         document by sending by Federal Express to the addressee(s) as indicated on
           the attached list.

23      I hereby certify that I am employed in the office of a member of the Bar of this
24  Court at whose direction the service was made.

25      Executed on November 15, 2017, at Los Angeles, California.

26                                      */s/ Myra Kulick*
                                        Myra Kulick

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**<u>SERVICE LIST</u>**

**By FedEx Delivery:**

Magistrate Judge Maria-Elena James
San Francisco Courthouse
Courtroom B – 15th Floor
450 Golden Gate Avenue
San Francisco, CA  94102

**3:17-cv-03159-MEJ Notice will be sent via NEF/electronically mailed to:**

- ***Ruchit Kumar Agrawal***
  *ruchit@kumarlawsv.com*
- ***Reuven Duer***
  *ruvduer@gmail.com*
- ***Harry David Hochman***
  *hhochman@pszjlaw.com*
- ***Steven Jay Kahn***
  *skahn@pszjlaw.com*
- ***PLC Diagnostics Inc.***
  *ruvduer@gmail.com*
- ***Eric Rieders***
  *Eric.Rieders@nmslabs.com*
- ***Sherrett Odell Walker***
  *sow@walkercalawyer.com*