Sherrett O. Walker (SBN 286595)
ATTORNEY AT LAW
P.O. Box 1543
Pacifica, California 94044-6543
(415) 305-6546
*rett@walkercalawyer.com*

Counsel for Eurosemillas, S.A.,
Mohan Uttarwar and Piyush Gupta

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUROSEMILLAS, S.A., <br><br> Plaintiff, <br><br> v. <br><br> PLC DIAGNOSTICS, INC.; NATIONAL MEDICAL SERVICES, INC.; LDIP, LLC; REUVEN DUER; ERIC RIEDERS; and Does 1 – 10, <br><br> Defendants. | Case No. 17-cv-3159-MEJ <br><br><br> SHERRETT O. WALKER DECLARATION RE: MOTIONS TO DISMISS <br><br> Date: February 1, 2018 <br> Time: 10:00 a.m. <br> Place: 450 Golden Gate Ave. <br> Courtroom B – 15th Floor <br> San Francisco, CA <br><br> Judge: Maria-Elena James |
| PLC DIAGNOSTICS, INC.; NATIONAL MEDICAL SERVICES, INC.; LDIP, LLC; REUVEN DUER; ERIC RIEDERS, <br><br> Third Party Plaintiffs, <br> v. <br> MOHAN UTTARWAR; PIYUSH GUPTA, <br><br> Third Party Defendants. | |
| AND RELATED COUNTERCLAIMS | |

I, Sherrett O. Walker, declare:

1.  I am counsel of record for Eurosemillas, S.A., Mohan Uttarwar, and Piyush Gupta (collectively, *"**Moving Parties"***) who filed the two pending Motions to Dismiss set to be heard on February 1, 2018. I have personal, first-hand knowledge of all matters stated herein and, if called as a witness, could and would testify competently thereto.

2.  For the Court's convenience, this declaration is submitted prior to the upcoming hearing to facilitate the discussion of the Court's questions directed at the Moving Parties in the Order issued on January 9, 2018.

## Footnote 1 of the Order Re: New Issues

3.  The Court observes that the Moving Parties raise new issues for the first time in their respective Reply Briefs, and cites cases where this Court and the Ninth Circuit either declined to consider such new issues or deemed them waived. Undersigned counsel has endeavored to come up to speed in this complicated case since being retained to become counsel of record for Eurosemillas three months ago, and last month for Uttarwar and Gupta during the busy holiday season. This is offered not as an excuse, but as an explanation (and apology) for the new issues raised as counsel became familiar with the disputed facts and relevant legal authority.

4.  That point aside, the Moving Parties respectfully request that the Court exercise its discretion and consider these new issues for the sake of judicial economy to avoid unnecessary motion practice. *See Omar v. Sea-Land Service, Inc.*, 813 F.2d 986, 991 (9th Cir. 1987) ("A trial court may dismiss a claim sua sponte under [Rule] 12(b)(6)," and "[s]uch a dismissal may be made without notice where the claimant cannot possibly win relief."); *Ricotta v. Cal.,* 4 F. Supp. 2d 961, 968 n. 7 (S.D. Cal. 1998) ("The Court can dismiss a claim sua sponte for a Defendant who has not filed a motion to dismiss under Fed. R. Civ. P. 12(b)(6).").

5. Moreover, the defense of failure to join an indispensable party is never waived and can be raised at any time under Federal Rules of Civil Procedure 12(h), as Eurosemillas explains in Footnote 1 of its Reply Brief. (Dkt 51.) *See Wood v. City of San Diego*, 678 F.3d 1075, 1082 (9th Cir. 2012) (holding that action may be dismissed at any time under Rule 12(h) for lack of subject matter jurisdiction).

6. The Court lacks jurisdiction over the non-moving parties' claims for tortious interference with the Product Development Agreement (PDA) as well as the License Agreement, the performance of which is a material term and critical component of the PDA.

7. iNDx Lifecare, Inc. (*"iNDx"*)—as the party alleged to have been induced to breach the PDA and the License Agreement—is an indispensible party to the present action that the non-moving parties failed to join. Nor can they do so because their claims should have been asserted and prosecuted in the action filed by NMS Labs against iNDx for breach of the PDA and accompanying PDA Addendum (*"iNDx Action"*).[1] *Res judicata* therefore bars any claims that arise or relate to iNDx's performance of its obligations under the PDA and the License Agreement expressly incorporated by reference, and attached to, the PDA.

8. If the Court is not inclined to consider the statute of limitations defense raised in the Reply Brief (Dkt 66), the Moving Parties nevertheless urge the Court to exercise its discretion to sua sponte dismiss the time-barred claims. This defense is complete and obvious from the face of the pleadings and the Court's own records. The defense has not been waived, nor will it be waived, because the Moving Parties intend to affirmatively plead it in their respective answers. *See Tahoe-Sierra Preservation Council, Inc. v. Tahoe Reg'l Planning Agency*,

---

[1] *See* Verified Complaint for Multiple Breaches of Contract and Money Had and Received, dated August 5, 2016, attached as Exhibit A to the RJN.

SHERRETT O. WALKER
P.O. Box 1543
Pacifica, California 94044-6543
(415) 305-6546

216 F.3d 764, 788 (9th Cir. 2000) ("The defendants raised the correct limitations periods in their answers.  The inclusion of the defense in an answer is sufficient to preserve the defense. In fact, we have permitted defendants to raise affirmative defenses for the first time well after filing an answer, and have also permitted district courts to raise an affirmative defense sua sponte, so long as the defense has not been affirmatively waived.") (citations omitted).

9. The Reply Briefs have given ample notice to the non-moving parties of all the issues raised to date, which they may address at the hearing or, if the Court deems necessary, in supplemental briefing.

## Order ¶ A:  Litigation Privilege

10. iNDx filed for Chapter 11 bankruptcy protection in August 2016.[2] It was in the course of these legal proceedings that Eurosemillas first began to assert its joint tenancy ownership rights to the contested patents and intellectual property (the *"Collateral"*) previously owned by iNDx pursuant to the terms of the Intercreditor Agreement. And then only because PLC Diagnostics and NMS Labs misrepresented to the bankruptcy court that they owned ***ALL right, title and interest in and to the Collateral.***[3]

11. Counterclaimants allege a course of conduct that predates the present litigation that, if true, would not be deemed privileged communications

---

[2] *See* Page 3: 2-6 of the Report and Recommendation to Grant Default Judgment, and Request for Reassignment, dated June 12, 2017 attached as Exhibit B to the Request for Judicial Notice, dated November 21, 2017 (*"RJN"*) (Dkt 51-1). The Moving Parties did not seek to enter into the record the volumunous filings the parties submitted in the bankruptcy proceeding to avoid burdening the Court with so much paperwork. If the the Court does not dismiss the claims alleged against the Moving Parties, they will promptly present the bankruptcy filings in a Fed. R. Civ. P. 12(c) motion for judgment on the pleadings to properly raise in the opening brief any issues the Court declined to consider.

[3] *See* Second Amended Complaint of ¶¶ 86-90 (Dkt 27).

under California Civil Code § 47(b). This much Eurosemillas concedes. Counterclaimants should not be permitted to plead around the litigation privilege like this, however, because they are bound by the judicial admissions NMS Labs made in the iNDx Action and in the bankruptcy proceedings regarding the Intercreditor Agreement.[4]

12. NMS Labs nowhere even hints in the iNDx Action that any of the Moving Parties made the performance of the PDA (and the License Agreement that the PDA incorporates by reference) more expensive or difficult sufficient to make the Moving Parties liable for tortious interference with contractual relations. The Moving Parties were not charged in the iNDx Action, and, under the doctrine of *res judicata,* cannot be charged now, with conduct or communications that arise or relate to any interference with iNDx's performance of these contracts.

*LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997)

13. *LiMandri* held that "[f]or the litigation privilege to apply to prelitigation communicative conduct, the conduct must have some relation to a proceeding that is actually contemplated in good faith and under serious consideration by . . . a possible party to the proceeding[.]" *Id.* at 348.

14. The issue arose in an interpleader action in which the allegations of the "complaint [did] not establish that the interpleader action was a proceeding contemplated in good faith or under serious consideration by Judkins when he interfered with [Plaintiff] LiMandri's contractual relations. In short, the interpleader litigation was necessitated rather than anticipated by Judkins's alleged interference with LiMandri's contractual relations." *Id.*

---

[4] *See* Verified Complaint for Multiple Breaches of Contract and Money Had and Received, dated August 5, 2016 attached as <u>Exhibit A</u> to the RJN.

SHERRETT O. WALKER
P.O. Box 1543
Pacifica, California 94044-6543
(415) 305-6546

15.     *LiMandri* did not involve claims barred by *res judicata* or judicial admissions made in prior litigation that barred claims in subsequent litigation because the claims in both proceedings—like the claims at issue here—arise from "the same transactional nucleus of facts." Stated differently, the only allegations for tortious interference not barred or foreclosed by *res judicata* or prior judicial admissions are those that relate to the *filing of this lawsuit* and Eurosemillas' communications with third parties (made in the context of the iNDx's Chapter 11 bankruptcy proceeding) regarding Eurosemillas' joint ownership rights in and to the Collateral under the Intercreditor Agreement.

16.     The remaining relevant allegations that the non-moving parties make arise or relate to the current or prior legal proceedings and are covered by the litigation privilege to the extent they serve as the basis for the counterclaims alleged against Eurosemillas (Dkt 32):

Counterclaims Paragraph 48: On or about December 24, 2016, about two months after the foreclosure sale, Gupta executed a Quitclaim Assignment of any interests in and to the intellectual property constituting the Collateral to Eurosemillas, which Quitclaim Assignment recites as a purported fact that Eurosemillas received pari passu rights in the Collateral pursuant to the Fraudulent Eurosemillas Intercreditor Agreement.

Counterclaims Paragraph 49: Eurosemillas has claimed and now alleges in its Complaint that during the second half of 2015 and the first half of 2016, PLC and NMS "conspired" to "plunder" their Collateral, including by blocking various restructuring or refinancing proposals that would allegedly have prevented iNDx from becoming insolvent. Eurosemillas further contends in the Complaint that the foreclosure was void, that it has a joint tenancy ownership interest in the Collateral (including under the purported Quitclaim Assignment executed by Gupta upon false representations of fact), and that it is entitled to exclusive general commercialization rights in the European Union and Latin

1  America for all products using iNDx intellectual property.

2  <u>Counterclaims Paragraph 50:</u> Probable cause did not and does not exist for
3  the filing of the Complaint, as the factual allegations are unfounded and no legal
4  basis exists for such remedies. NMS and PLC made numerous attempts and
5  proposals to assist iNDx and thereby preserve their own investments, and in each
6  instance, without exception, those efforts were blocked or impaired by actions or
7  inactions by Eurosemillas itself, or by actions or inactions of Uttarwar and Gupta
8  motivated by self-interest, in breach of their fiduciary duties of care, loyalty and
9  good faith to shareholders and creditors of an insolvent company. Before and
10 after the foreclosure, Eurosemillas had and has no rights in the intellectual
11 property that constituted the Collateral as it has asserted, and its claim and
12 exercise of exclusive commercialization rights in Europe and Latin America have
13 been and continue to be in violation of NMS's rights under the PDA and License
14 Agreement and LDIP's ownership rights.

15 <u>Counterclaims Paragraph 51:</u> Counterclaimants are informed and believe,
16 and on that basis allege, that Uttarwar and Gupta induced Eurosemillas to bring
17 litigation without probable cause by, in part, offering a joint venture, partnership
18 or similar arrangement to Eurosemillas in the event that Eurosemillas prevails in
19 the lawsuit, and that Eurosemillas has induced Uttarwar and Gupta to provide
20 support for the litigation on the same basis.

### Order ¶ B: Prematurity

22  17.  The non-moving parties' counterclaims for tortious interference are
23 barred as premature by *Pacific Gas & Electric Company v. Bear Stearns & Co.*, 50 Cal.
24 3d 1118, 1137 (1970) to the extent they are premised on the allegation that:
25 "Probable cause did and does not exist for the filing of the [Eurosemillas']
26 Complaint, as the factual allegations are unfounded and no legal basis exists for
27 such remedies." Paragraph 50 of the Counterclaims (Dkt 32). Any claims based on
28 such allegations cannot be brought until the present litigation ends.

1  18. As explained above and in the Moving Parties' briefs filed to date, the non-moving parties cannot base their claims on "allegations that Eurosemillas' conduct over the years has interfered with iNDx's performance under the Intercreditor Agreement, Product Development Agreement (PDA) and License Agreement." All claims based on these allegations are barred or foreclosed due to:

a. The judicial admissions NMS made in the iNDx Action regarding the breach of the PDA that do not mention the Moving Parties' ostensible tortious interference;

b. This Court's lack of subject matter jurisdiction over the counterclaims and the Third Party Complaint because iNDx, as an indispensible party, cannot be joined in the present action because *res judicata* bars the non-moving parties from doing so;

c. *Res judicata* barring the joining of the Moving Parties in the present action because the non-moving parties should have prosecuted their claims in the iNDx Action.

d. California's two-year statute of limitations barring the tortious interference claims as untimely.

19. Any relevant allegations that remain arise or relate to the present legal proceedings.

**Order ¶ D: Supplemental Jurisdiction**

20. The non-moving parties do not cite any binding Ninth Circuit authority for the specific proposition that there does not "need to be complete diversity between the Third Party Plaintiffs and the Third Party Defendants. Pursuant to section 1367(b), when the original basis of jurisdiction is diversity, supplemental jurisdiction cannot be exercised over claims by plaintiffs against persons joined as parties to the original complaint. This limitation applies only to the original plaintiff in the action, and not to the original defendant who later

becomes a third party plaintiff." Opposition 9: 12-17 (Dkt 63).

21.     After conducting more extensive research, however, the undersigned found recent decisions by district courts in the Ninth Circuit that have concluded that there need not be an independent basis of jurisdiction for third-party claims. *See generally Miesen v. AIA Ins., Inc.,* 2017 U.S. Dist. LEXIS 165479 (D. Idaho October 17, 2017).

22.     Even when proper, however, a district court may decline to exercise supplemental jurisdiction over a claim if in exceptional circumstances there are other compelling reasons for declining jurisdiction. *See* 28 U.S.C.S. § 1367(c)(4).

23.     The Ninth Circuit instructs that the inquiry regarding the exercise of supplemental jurisdiction over state law claims under 28 U.S.C. § 1367(c) should be "informed by . . . values of economy, convenience, fairness, and comity." *Acri v. Varian Assocs.,* 114 F.3d 999, 1001 (9th Cir. 1997). These are among the "other compelling reasons" for which a court may decline to exercise supplemental jurisdiction.

24.     Here the Moving Parties contend that the value of promoting comity between state and federal courts is an overriding compelling reason for declining to exercise supplemental jurisdiction. *See, e.g., Younger v. Harris,* 401 U.S. 37, 43-54 (1971) (noting that comity is a cardinal principle in our federal system).

25.     If the Court is not inclined to dismiss all the claims against the Moving Parties, then they should be remanded to state court to resolve the conflicting interpretation and application of California law the parties have presented to the Court. *Jankey v. Beach Hut,* 2005 U.S. Dist. LEXIS 45235 (C.D. Cal. 2005) citing *Kazor v. Gen. Motors Corp.,* 585 F. Supp. 621, 623 (E.D. Mich. 1984) (finding that remand was warranted where no federal claims remained because remand is "particularly helpful in procuring a more definitive reading of state law where, as here, there is not a substantial amount of [state] authority interpreting the applicable provisions of state statute").

SHERRETT O. WALKER
P.O. Box 1543
Pacifica, California 94044-6543
(415) 305-6546

26. Accordingly, compelling reasons exist for this Court to decline to exercise supplemental jurisdiction over the non-moving parties' state law claims because: (i) the California courts should be given an opportunity to interpret California's laws, (ii) any calculated effort to avoid having California courts decide issues of California law is to be discouraged, and (iii) the parties themselves are entitled to a surer-footed interpretation of California's laws. *United Mine Workers v. Gibbs,* 383 U.S. 715, 726 (1966) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").

I declare under penalty of perjury, under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Dated: January 31, 2018          _____
                                  Sherrett O. Walker

**CERTIFICATE OF SERVICE**

I hereby certify that the above document was filed electronically with the Clerk of the United States District Court for the Northern District of California, and was served via hyperlink generated by the court's CM/ECF system, which was sent electronically to:

    Christopher D. Sullivan
    *csullivan@diamondmccarthy.com*
    DIAMOND McCARTHY LLP
    150 California Street, Suite 2200
    San Francisco, California 94111
    Tel: (415) 692-5200

I declare under penalty of perjury, under the laws of the State of California and the United States of America, that the foregoing is true and correct.

Dated: January 31, 2018              _____
                                                      Sherrett O. Walker

SHERRETT O. WALKER
P.O. Box 1543
Pacifica, California 94044-6543
(415) 305-6546