UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EUROSESMILLAS, S.A., <br><br> Plaintiff, <br><br> v. <br><br> PLC DIAGNOSTICS, INC., et al., <br><br> Defendants. | Case No. 17-cv-03159-TSH <br><br> **ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS** <br><br> Re: Dkt. No. 104 |

## I.   INTRODUCTION

Pending before the Court is a motion for judgment on the pleadings by Defendants LDIP, LLC, Eric Rieders, and Reuven Duer.  ECF No. 104.  Plaintiff Eurosemillas, S.A., filed an opposition, ECF No. 122, and Defendants filed a reply, ECF No. 124.  The Court heard oral argument on February 7, 2019.  Having considered the parties' positions and relevant legal authority, the Court **GRANTS** Defendants' motion for the following reasons.

## II.   BACKGROUND

### A.   Factual Allegations

Defendant PLC Diagnostics, Inc., and non-party iNDx Technology, Inc., entered into a Joint Venture Agreement ("JV Agreement") pursuant to which they agreed to create iNDx Lifecare, Inc. ("iNDx").  Sec. Am. Compl. ("SAC") ¶ 15, ECF No. 27.  iNDx was founded to develop, produce, and sell diagnostic devices and tests based, initially, on technology developed

by PLC and certain computer programs to which iNDx had access or had been developing for commercialization. *Id.* ¶ 16. Duer was a shareholder and director of PLC.

In August 2013, as part of the due diligence before the parties entered into the JV Agreement, PLC and Duer represented to Mohan Uttarwar of iNDx Technology that the PLC technology had passed the sample tests in the PSA (Prostate Specific Antigen) test kit that had been sent to them in July 2013 in a commercially reasonable manner (i.e. without tuning and adjusting the system for each sample). They further represented that the technology would be ready to bring to market within six months after execution of the JV Agreement. *Id.* ¶ 17.

Under the terms of the JV Agreement, PLC assigned and transferred to iNDx all ownership rights of its patents and related intellectual property, and in exchange iNDx issued a secured convertible promissory note in the principal amount of $3,100,000. *Id.* ¶ 18. Under a security agreement from iNDx to PLC dated December 27, 2013, iNDx's obligations under PLC's note were secured by a pledge of the patents identified in that agreement together with all right, title and interest to these inventions and related intellectual property. *Id.* ¶ 19.

iNDx raised $2,100,000 in Series A equity financing in March 2014. Eurosemillas participated in this financing with an investment of $200,000, based on the representation of the readiness of the technology (i.e. that it would be ready to go to market in six months) made by PLC and Duer. *Id.* ¶ 20.

In August 2014, Defendant NMS became a strategic partner of iNDx. NMS and iNDx agreed to develop, market and sell small molecule assay products based on their respective technologies and expertise. *Id.* ¶ 21. NMS provided secured debt financing to iNDx in the form of a loan evidenced by a secured convertible note dated November 15, 2014, in the principal amount of $1,000,000. *Id.* ¶ 22. NMS provided additional secured debt financing to iNDx in the form of a second loan evidenced by a secured convertible note dated May 27, 2015, in the amount of $500,000. *Id.* ¶ 24. Under security agreements dated November 15, 2014 and May 27, 2015, iNDx's obligations under the NMS notes and related documents were secured by a pledge of the same collateral as was pledged to PLC. *Id.* ¶¶ 23, 25. Rieders was the Chair of NMS's board of directors. *Id.* ¶ 8.

Eurosemillas provided secured debt financing to iNDx in the form of a loan evidenced by a secured convertible promissory note dated January 28, 2015, in the principal amount of $250,000. *Id*. ¶ 26. Under a security agreement from iNDx to Eurosemillas dated October 24, 2014, iNDx's obligations under Eurosemillas's note and related documents were secured by a pledge of the same collateral as was pledged for PLC's note and NMS's two notes. *Id.* ¶ 27.

Around this time, Eurosemillas, NMS and PLC agreed to hold *pari passu* rights, title and interest in the collateral pursuant to an intercreditor agreement ("ICA") that is referred to in the recitals of a redline draft that would have amended it. *Id.* ¶ 28. (The existence of an ICA with Eurosemillas is disputed by the Defendants, but for purposes of this pleadings motion, the Court assumes one existed.) The alleged ICA was between Eurosemillas, PLC and NMS. *Id.* Eurosemillas says it would never have agreed to loan $250,000 to iNDx had PLC and NMS not agreed to the ICA.

PLC was the majority shareholder of iNDx. Duer was a member of iNDx's board of directors, in addition to his role at PLC. Rieders was a managing consultant for iNDx and later the Chair of its board, in addition to his role at NMS. *Id.* ¶¶ 7, 8, 138.

For reasons that are not made clear in the SAC, starting sometime in 2015, Duer began to undermine iNDx's efforts to remain solvent. The PLC-appointed directors on iNDx's board blocked every proposed financing option, while Duer did everything he could to sabotage the company operationally. *Id.* ¶ 31. PLC's goal was to drive iNDx into insolvency so PLC could take back its intellectual property. *Id.* ¶ 33. Because that intellectual property also secured NMS's notes, PLC and NMS began to collude to devise a plan where they would both share the rights to the intellectual property to the exclusion of others, such as Eurosemillas. *Id.* ¶ 34.

Ultimately, NMS plundered iNDx's tangible assets and hired away its employees. *Id.* ¶¶ 39-41. On or around July 14, 2016, PLC and NMS jointly informed iNDx that its intellectual property would be sold at a "public auction" to be conducted at the law offices of their attorneys to pay off their respective notes. *Id.* ¶ 41. iNDx declared bankruptcy on August 11, 2016. *Id.* ¶ 47. Because iNDx was unable to secure financing to resume business operations, the bankruptcy court lifted the automatic stay on October 19, 2016, pursuant to a stipulation entered into between iNDx,

1 PLC and NMS. *Id.* ¶ 48.

The SAC has conflicting obligations about the auction. Paragraph 59 alleges that PLC and NMS conducted a public foreclosure sale of the collateral on November 4, 2016, where they purchased the collateral that secured iNDx's obligations to NMS, PLC and Eurosemillas. Paragraph 60 alleges that PLC and NMS announced at the foreclosure sale that they had assigned all their interest in the collateral to LDIP. By contrast, paragraph 63 alleges that PLC and NMS purchased the collateral through LDIP, an entity they jointly created an operated. *Id*. ¶ 6. According to paragraph 63, LDIP made a $1,000,000 credit bid to buy the collateral, i.e., it did not actually pay dollars for it but rather credited iNDx $1,000,000 against its outstanding obligations.

In any event, Eurosemillas had invested in and loaned money to iNDx, and the company was now bankrupt and no longer had the collateral that secured Eurosemillas's loan, which was in LDIP's hands. Eurosemillas now asserts four claims for relief. First, it sues PLC and NMS for breach of the ICA. The gist of the claim is that the ICA placed Eurosemillas, PLC and NMS on equal footing with respect to the collateral, but the public auction resulted in all of the collateral going to PLC and NMS. Second, it sues PLC and NMS for breach of the covenant of good faith and fair dealing. Third, it sues Duer, Rieders, PLC and NMS for fraud in inducing Eurosemillas to invest in and loan money to iNDx in the first place. Fourth, Eurosemillas sues Duer, Rieders, PLC and NMS for unfair competition. A conundrum in the SAC is that it lists LDIP as a Defendant in the caption and requests relief against it in the prayer for relief, but none of the claims for relief state that they are against LDIP.

### III. LEGAL STANDARD

**A. Rule 12(b)(6)**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that does not meet this requirement can be dismissed pursuant to Rule 12(b)(6). In interpreting Rule 8(a)'s "short and plain statement" requirement, the Supreme Court has held that a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007), which requires that "the plaintiff plead factual content that allows the

4

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

This standard does not ask the Plaintiff to plead facts that suggest it will probably prevail, but rather "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quotation marks omitted). The Court must "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.,* 519 F.3d 1025, 1031 (9th Cir. 2008). The Court is not, however, required to assume the truth of legal conclusions. *Iqbal*, 556 U.S. at 679.

**B.     Rule 12(c)**

Because Defendants have answered Eurosemillas's SAC, their motion is brought pursuant to Rule 12(c) rather than Rule 12(b)(6). Rule 12(c) permits either party "[a]fter the pleadings are closed but within such time as not to delay the trial . . . to move for judgment on the pleadings." Like a motion to dismiss under Rule 12(b)(6), a motion brought pursuant to Rule 12(c) "is directed at the legal sufficiency of a party's allegations." *Carmen v. San Francisco Unified Sch. Dist.,* 982 F. Supp. 1396, 1401 (N.D. Cal. 1997). "'Although Rule 12(c) differs in some particulars from Rule 12(b)(6), the standard applied is virtually identical.'" *Id.* (quoting *Moran v. Peralta Community College Dist.,* 825 F. Supp. 891, 893 (N.D. Cal. 1993)). A court adjudicating a motion under Rule 12(c) therefore must "accept all material allegations of fact alleged in the complaint as true, and resolve all doubts in favor of the non-moving party." *Religious Tech. Ctr. v. Netcom On–Line Communication Servs., Inc.,* 907 F. Supp. 1361, 1381 (N.D. Cal. 1995).

**C.     Leave to Amend**

Once the court issues a pretrial scheduling order that establishes a deadline for the amendment of pleadings, a motion to amend filed after the deadline for amendment is governed by Rule 16 of the Federal Rules of Civil Procedure rather than Rule 15. *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607-08 (9th Cir. 1992). Rule 16(b) provides that a "scheduling order shall not be modified except by leave of court and upon a showing of good cause." Fed. R. Civ. Proc. 16(b). Thus, when a party seeks to amend its pleading after the deadline for amendment has passed, it must show "good cause" for modification of the scheduling order. *See*

*Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000); *Johnson*, 975 F.2d at 608. The deadline to seek leave to amend pleadings in this action was May 4, 2018. ECF No. 95.

### IV. DISCUSSION

#### A. Claims Against LDIP

As noted above, it is not at all clear which claims, if any, are alleged against LDIP. The SAC specifically states which Defendants each claim for relief is alleged against, *see* SAC, pages 11, 17, 20, 24, and none of them list LDIP. Because LDIP is listed in the caption as a Defendant, and the prayer for relief seeks relief against it, *see* SAC, pages 27-30, for purposes of this motion the Court will generously assume that Eurosemillas meant to allege every claim against LDIP. In its opposition to Defendants' motion for judgment on the pleadings, however, Eurosemillas argues only that it has stated a claim for breach of contract against LDIP and does not argue that any of its other claims apply to LDIP.

##### 1. Breach of Contract

The breach of contract claim mentions LDIP four times:

> Paragraph 88: "Plaintiff is informed and believes that PLC and NMS assigned to LDIP their interest in and to the Collateral."
>
> Paragraph 89: "Plaintiff is further informed and believes that PLC and NMS assigned to LDIP their rights and liabilities under the Intercreditor Agreement."
>
> Paragraph 90: "LDIP challenges the validity of Intercreditor Agreement and refuses to recognize Plaintiff's joint ownership rights in the Collateral."
>
> Paragraph 91: "PLC and NMS are liable for LDIP's breach of the Intercreditor Agreement, as PLC and NMS specifically agreed in Section 10(c) of the agreement to be responsible for their assignees' compliance with the terms and conditions of the Intercreditor Agreement, and that PLC and NMS would be fully liable for any breach of the agreement by any such assignee."

The elements of a claim for breach of contract under California law are: (1) existence of a contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff as a result of the breach. *Abdelhamid v. Fire Ins. Exch.*, 182 Cal. App. 4th 990, 999 (2010); *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008).

Here, Eurosemillas's claim against LDIP fails the first element because there are no factual

6

allegations showing that LDIP is or was a party to any contract with Eurosemillas. The alleged ICA was between Eurosemillas, NMS and PLC. LDIP was not a party to it. SAC ¶ 28. The closest Eurosemillas comes to alleging it had a contractual relationship with LDIP is paragraph 89 of the SAC, which alleges in conclusory fashion that "PLC and NMS assigned to LDIP their rights and liabilities" under the ICA, but even that falls short. In certain circumstances, a party can be considered to have assumed liability under a contract when a "party accepts the rights and privileges of a contract." *Pacini v. Nationstar Mortg., LLC*, 2013 WL 2924441, \*4 (N.D. Cal. June 13, 2013). To support an implied assumption of liability theory, "plaintiffs must allege that liabilities were not limited in the transfer of assets, and that the intent of the parties was that they should be transferred." *Id.* at \*5. Significantly, these allegations must be supported by facts, and "the conclusory allegation" that a defendant assumed another's assets and liabilities is not sufficient. *Id.*; *see also Gerritsen v. Warner Bros. Entertainment Inc.*, 112 F. Supp. 3d 1011, 1037-38 (C.D. Cal. 2015) (surveying case law holding that conclusory allegations such as this do not state a claim for the assumption of liability). Here, Eurosemillas alleges only that conclusion with no supporting facts. This is not sufficient to state a claim. Accordingly, the Court enters judgment on the pleadings on the first claim for relief in favor of LDIP.

### 2. Breach of the Implied Covenant of Good Faith and Fair Dealing

Eurosemillas's second claim is for breach of the implied covenant of good faith and fair dealing. This claim makes no allegations specific to LDIP with the exception of the allegation that PLC and NMS incorporated LDIP so as to become co-owners of the collateral. SAC ¶ 113.a. The implied covenant "requires each contracting party to refrain from doing anything to injure the right of the other to receive the benefits of the agreement." *Egan v. Mut. of Omaha Ins. Co*., 24 Cal. 3d 809, 818 (1979). If a complaint fails to allege facts sufficient to show the existence of a contractual relationship between the plaintiff and the defendant, a claim for breach of the covenant implied in that non-existent contract must also fail. *See Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1239 (S.D. Cal. 2009) ("In order to state a claim for relief on an implied covenant theory, there must first be a contractual relationship between the parties."); *Henry v. Associated Indem. Corp*., 217 Cal. App. 3d 1405, 1416-17 (1990) ("There was no direct contractual relationship

7

between [plaintiff] and the [u]nderwriters from which either a breach of the covenant of good faith and fair dealing or a breach of contract action could properly spring.") (citing *Gruenberg v. Aetna Ins. Co.*, 9 Cal. 3d 566, 576 (1973)). Given the absence of sufficiently pleaded allegations that LDIP assumed liabilities under the ICA, or that LDIP was a signatory to the ICA, Eurosemillas does not state a claim for breach of the implied covenant against LDIP.

### 3. Fraud in the Inducement

Eurosemillas's third claim is for fraud in the inducement. Fraud in the inducement is a subset of fraud; it "occurs when the promisor knows what he is signing but his consent is induced by fraud." *Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (citation, quotation marks and emphasis omitted). The elements of fraud are (a) a misrepresentation (false representation, concealment, or nondisclosure), (b) scienter or knowledge of its falsity, (c) intent to induce reliance, (d) justifiable reliance, and (e) resulting damage. *Lazar v. Super. Ct.*, 12 Cal. 4th 631, 638 (1996).

In addition to pleading the elements of fraud, Federal Rule of Civil Procedure 9(b) requires allegations of fraud to be stated with particularity and supported by allegations of the who, what, when, where, and how of the misrepresentations alleged. *See Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997). The circumstances alleged must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (quoting *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (quotation marks omitted)).

"Rule 9(b) does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged participation in the fraud.'" *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (quoting *Haskin v. R.J. Reynolds Tobacco Co.,* 995 F. Supp. 1437, 1439 (M.D. Fla. 1998)). In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme." *Moore v. Kayport Package Express,*

*Inc.,* 885 F.2d 531, 541 (9th Cir. 1989).

Here, the SAC does not allege that LDIP made any misrepresentations or fraudulent statements. Accordingly, the SAC does not state a claim for fraud against LDIP.

### 4. Unfair Competition

Eurosemillas's fourth claim is for violations of California's unfair competition law. The UCL "prohibits any unfair competition, which means 'any unlawful, unfair or fraudulent business act or practice.'" *In re Pomona Valley Med. Group,* 476 F.3d 665, 674 (9th Cir. 2007) (quoting Cal. Bus. & Prof. Code § 17200, *et seq.*). Each prong – fraudulent, unfair, and unlawful – is independently actionable. *Lozano v. AT & T Wireless Servs., Inc.,* 504 F.3d 718, 731 (9th Cir. 2007); *Cel-Tech Communc'ns, Inc. v. L.A. Cellular Tel. Co.,* 20 Cal.4th 163, 180 (1999). A plaintiff can state a claim if it alleges a "practice offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Smith v. State Farm Mut. Auto. Ins. Co.*, 93 Cal. App. 4th 700, 719 (2001) (citation and quotation marks omitted). Or, a plaintiff can state a claim if the predicate public policy alleged to be violated is "'tethered' to specific constitutional, statutory or regulatory provisions." *Scripps Clinic v. Superior Court*, 108 Cal. App. 4th 917, 940 (2003).

The SAC makes no allegations of unlawful, unfair or fraudulent acts or practices by LDIP. Accordingly, the SAC does not state a UCL claim against it.

## B. Claims Against Eric Rieders and Reuven Duer

### 1. Fraud in the Inducement

Eurosemillas also asserts its fraud claim against Rieders and Duer. SAC ¶¶ 117-133. Specifically, Eurosemillas alleges that Rieders and Duer "induced Plaintiff to participate in iNDx's Series A financing round with a $200,000 investment and subsequent $250,000 loan to iNDx via its *pari passu* note." *Id.* ¶ 120. The Series A financing occurred "in March 2014." *Id.* ¶ 20. The loan was funded by January 28, 2015. *Id.* ¶ 26.

As noted above, a plaintiff in a fraud case cannot lump alleged misrepresentations by multiple defendants together. Accordingly, the Court scrutinizes the SAC for false statements made specifically by Rieders or Duer. There are four:

9

**Six months to market (Duer).** "On December 9, 2013, at a meeting held at PLC's office located at 9568 Topanga Canyon Blvd., Chatsworth, California 91311, Defendant Duer misrepresented to Ricardo Merino of Eurosemillas the state of the PLC technology underlying the Collateral, and assured him that the technology would be ready for market in six (6) months. On October 21, 2014 in a meeting at 4:00-6:45 pm PST at iNDx's office in Los Gatos, Defendant Duer again misrepresented the readiness of the PLC technology underlying Collateral and reassured Javier Cano of Eurosemillas that the technology would be delivered in Q1 2015." *Id*. ¶ 121; *see also id*. ¶¶ 17, 106.

**Passed the sample tests in the PSA (Duer).** "In August 2013, as part of the due diligence before the parties entered into the JV Agreement, PLC and Defendant Duer represented to Mohan Uttarwar of iNDx Technology, Inc., that the PLC technology had passed the sample tests in the PSA (Prostate Specific Antigen) test kit that had been sent to them in July 2013, in a commercially reasonable manner (i.e. without tuning and adjusting the system for each sample)." *Id*. ¶ 17; *see also id*. ¶ 106.

**We *will* enter into an ICA with you (Duer and Rieders).** "On January 29, 2015 at 9:30 am PST, in a phone call, Defendant Rieders of NMS welcomed Plaintiff's loan of $250,000 to iNDx at the same *pari passu* terms as PLC and NMS and agreed to enter into the Intercreditor Agreement and fulfill their obligations under this contract," *id*. ¶ 124; *see also id*. ¶ 72. "On October 21, 2014 in a meeting at 4:00-6:45 pm PST at iNDx's office in Los Gatos . . . Defendant Duer further assured Javier Cano [of Eurosemillas] that iNDx's existing secured creditors would enter into the Intercreditor Agreement." *Id*. ¶ 121; *see also id*. ¶ 124.

**We *have* entered into an ICA with you (Rieders).** "On February 17, 2016, between 6 p.m. - 7 p.m. PST, the members of iNDx's Board convened via telephone to discuss, among other things, the terms of additional bridge financing that NMS considered providing to iNDx at the time. During that meeting, Defendant Rieders expressly acknowledged the *pari passu* rights that Plaintiff, PLC and NMS had to the Collateral pursuant to the terms of the Intercreditor Agreement. He made clear that any additional financing extended to iNDx would be contingent on all three existing secured creditors—PLC, NMS and Plaintiff—amending the Intercreditor Agreement."

1   SAC ¶ 75; *see also id*. ¶¶ 76, 77, 82, 83, 85.

2   These allegations are deficient. Duer's statements that the technology was six months to market are not actionable for two reasons. First, there are no allegations he believed those statements to be false when he made them. *See Lazar*, 12 Cal. 4th at 638 ("knowledge of falsity" is an element of a fraud claim); *Maganallez v. Hilltop Lending Corp.*, 505 F. Supp. 2d 594, 605 (N.D. Cal. 2007) (same). Second, the statements are opinions or predictions of future events. "[I]t is hornbook law that an actionable misrepresentation must be made about past or existing facts; statements regarding future events are merely deemed opinions." *San Francisco Design Ctr. Assoc's v. Portman Comp's*, 41 Cal. App. 4th 29, 43-44 (1995).

Duer's statement that the technology passed the sample tests is not actionable for two reasons as well. First, there are no allegations he knew that was false when he said it. *See Lazar*, 12 Cal. 4th at 638. Second, there are no factual allegations that satisfy the particularity requirement in Rule 9(b) to show that this statement fraudulently induced Eurosemillas to invest in or loan money to iNDx. The sole allegation with any kind of specificity concerning this statement is that in August 2013, before PLC and iNDx Technology entered into the JV Agreement to create iNDx, Duer *told iNDx Technology* that the PLC technology had passed the sample tests. SAC ¶ 17. There are no allegations in the SAC about Duer – or anyone – making that statement to anyone else, including Eurosemillas. Accordingly, these allegations do not show "with particularity the circumstances constituting fraud" *on Eurosemillas*. Fed. R. Civ. Proc. 9(b). Even if Eurosemillas has alleged the *what* of this part of its fraud claim, it has still not alleged who, when, where, and how. *Cooper*, 137 F.3d at 627. Eurosemillas cannot sue over a false statement made to someone else in the absence of specific allegations showing that the statement was repeated to, or also made to, Eurosemillas.

Duer and Rieders' statements that NMS and PLC intended to enter into an ICA with Eurosemillas are not actionable because there are no allegations showing that the statements were false when made. *See Lazar*, 12 Cal. 4th at 638. The statements are also predictions of future events. *See San Francisco Design Ctr. Assoc's*, 41 Cal. App. 4th at 43-44. Further, there was no justifiable reliance by Eurosemillas. *See Lazar*, 12 Cal. 4th at 638 ("justifiable reliance" is an

11

element of fraud). A *contract* is something that can justifiably be relied on. But a promise to enter into a contract in the future is kind of like getting engaged – it's a promise that sometime down the road one will make a binding promise, but it's not the binding promise itself. Until that binding commitment has actually been entered into, both sides know they have not made that commitment, and reliance is unjustified.

Finally, Rieders' statements in 2016 that an ICA was in place with Eurosemillas cannot be the basis for a fraud in the inducement claim because Eurosemillas did not rely on them, *see Lazar*, 12 Cal. 4th at 638 (reliance is a required element of fraud) when it invested back in 2014 or made the loan in 2015.

### 2. Unfair Competition

Eurosemillas also alleges a UCL claim against Rieders and Duer. SAC ¶¶ 134-50. The UCL claim incorporates by reference the fraud claim, *id.* ¶ 136, and adds allegations that Rieders and Duer breached their fiduciary duty to iNDx's shareholders, including Eurosemillas. *Id.* ¶¶ 138-44. This claim is defective, however, because Eurosemillas is not entitled to any relief against Rieders or Duer under the UCL.

First, all of the factual allegations against Rieders and Duer concern acts that happened in the past. With iNDx having filed for bankruptcy and lost its employees and tangible and intangible assets three years ago, Eurosemillas does not plausibly allege a continuing threat of misconduct by Rieders or Duer, and so injunctive relief cannot be awarded under the UCL. *See In re Vioxx Class Cases*, 180 Cal. App. 4th 130 (2009) ("Injunctive relief [under the UCL] is not available when there is no threat that the misconduct to be enjoined is likely to be repeated in the future").

Second, Eurosemillas is not entitled to restitution from Rieders or Duer. "A restitution order against a defendant [under the UCL] . . . requires both that money or property have been lost by a plaintiff, on the one hand, and that it have been acquired by a defendant, on the other." *Kwikset Corp v. Superior Court*, 51 Cal. 4th 310, 336 (2011). "But the economic injury that an unfair business practice occasions may often involve a loss by the plaintiff without any corresponding gain by the defendant, such as, for example, a diminishment in the value of some

12

asset a plaintiff possesses." *Id.* In such cases, a restitution order is not available. *See id.* That is the case here. The SAC contains no allegations that Rieders or Duer gained any money or property that had previously belonged to Eurosemillas.

Because no remedy under the UCL can be awarded to Eurosemillas against Rieders or Duer, these Defendants are entitled to judgment on the pleadings on this claim.

**C.  Leave to Amend**

The Court denies Eurosemillas leave to amend. As noted above, the deadline to seek leave to amend was a year ago. Accordingly, Eurosemillas would need to show good cause to amend the SAC. Not only does Eurosemillas not try to show any good cause, its opposition brief does not even ask for leave to amend. Further, at oral argument the Court asked Eurosemillas's counsel if there were any additional facts he could allege in a further amended complaint, and he said there were not. FTR at 12:01-06 ("To be honest, we haven't saved anything. We fired our bullet.").

## V.  CONCLUSION

For the reasons stated above, the Court **GRANTS** LDIP, Rieders and Duer's motion for judgment on the pleadings on all claims against them **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: May 2, 2019

THOMAS S. HIXSON
United States Magistrate Judge

13